841 So.2d 409 (2003)
Loran COLE, Appellant,
v.
STATE of Florida, Appellee.
Loran Cole, Petitioner,
v.
James V. Crosby, Jr., etc., et al., Respondents.
Nos. SC00-1388, SC01-192.
Supreme Court of Florida.
January 16, 2003.
Rehearing Denied March 18, 2003.
*413 Bill Jennings, Capital Collateral Regional Counsel-Middle, Peter J. Cannon, Assistant CCRC, Kevin T. Beck, Assistant CCRC, and Leslie Anne Scalley, Staff Attorney, Capital Collateral Regional Counsel-Middle Region, Tampa, FL, for Appellant/Petitioner.
Charlie J. Crist, Jr., Attorney General, and Judy Taylor Rush and Douglas T. Squire, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Loran Cole, an inmate under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, and he also petitions this Court for a writ of habeas corpus. We have jurisdiction, see art. V, § 3(b)(1), (9), Fla. Const., affirm the trial court's order denying relief under rule 3.850, and deny the petition for writ of habeas corpus.

I. BACKGROUND
The facts are set forth in detail in our direct appeal opinion. See Cole v. State, 701 So.2d 845, 848-49 (Fla.1997), cert. denied, 523 U.S. 1051, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998). Briefly stated, on Friday, February 18, 1994, Florida State University freshman John Edwards met his sister, Pam Edwards, then a senior at Eckerd College in St. Petersburg, for a weekend of camping in the Ocala National Forest. On the Friday evening of their arrival, the Edwardses were discovered by Cole and his companion, William Paul. During the course of the evening and during the following day John Edwards was brutally beaten and murdered, and Pam Edwards was sexually battered. Police arrested Cole and Paul on Monday, February 21,1994.
A jury convicted Cole of first-degree murder, two counts of sexual battery, two counts of kidnapping with a weapon, and two counts of robbery with a weapon. The trial court followed the jury's unanimous death recommendation, finding four aggravators,[1] no statutory mitigators, and two *414 nonstatutory mitigators.[2] We affirmed the convictions and death sentence on direct appeal. See Cole, 701 So.2d at 856.
Cole timely filed an initial Florida Rule of Criminal Procedure 3.850 motion and thereafter an amended rule 3.850 motion. The trial court held a hearing pursuant to Huff v. State, 622 So.2d 982, 983 (Fla. 1993), after which the trial court summarily denied several of Cole's claims and scheduled an evidentiary hearing on the remaining claims. Following the evidentiary hearing, the trial court entered a final order denying all relief. Cole raises numerous claims and subclaims in his rule 3.850 appeal[3] and in his habeas petition.[4] We have rearranged the order of the claims presented by Cole and will initially discuss the guilt phase claims and then discuss the penalty phase claims.

II. RULE 3.850 MOTION-GUILT PHASE
The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), set forth the standards a defendant must meet to establish that the defendant's trial counsel was ineffective. See Cherry v. State, 781 So.2d 1040, 1044 (Fla. 2000). In Strickland, the Supreme Court stated:
First, the defendant must show that counsel's performance was deficient. *415 This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052. In Florida, claims of ineffective assistance of trial counsel are cognizable in a rule 3.850 motion.

A. Guilt Phase Ineffective Assistance Claims Denied After Evidentiary Hearing
In his sixth claim, Cole raises numerous arguments that trial counsel was ineffective during the guilt phase. After an evidentiary hearing, the trial court denied Cole's rule 3.850 motion as to each of these subclaims.

1. Voir Dire
Cole first argues that trial counsel should have questioned each prospective juror individually, and counsel's failure to do so constitutes deficient performance. Cole maintains that he was prejudiced because two of the five non-individually questioned venire members ultimately became members of the jury that convicted Cole. The trial court found that every prospective juror was questioned individually by the trial court, by the State, or by trial counsel, and that trial counsel was an active participant throughout voir dire, even though trial counsel did not question each juror individually. There is competent, substantial evidence to support the trial court's findings. We find no error with the trial court's determination that, on the basis of this record, Cole has failed to demonstrate his trial counsel's ineffectiveness under Strickland for trial counsel's not questioning each prospective juror himself. Therefore, this subclaim is without merit. See Johnston v. Dugger, 583 So.2d 657, 662 (Fla.1991) (rejecting argument that counsel failed to voir dire jurors adequately); see also Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) (noting strategic decisions do not constitute ineffective assistance of counsel).

2. Juror Cutts
Cole next argues that trial counsel should have exercised a peremptory challenge to remove juror Cutts, an employee of the Department of Corrections. The record reflects that trial counsel unsuccessfully attempted to remove Cutts for cause. During voir dire, trial counsel concluded and advised Cole that a peremptory challenge should be exercised to remove Cutts; however, Cole stated to counsel that he wanted to retain Cutts. Trial counsel's conclusion as to juror Cutts was not sufficiently strong that counsel interfered with what Cole wanted to be done. We find no error in the trial court's determination that, under these circumstances, trial counsel's decision not to peremptorily challenge juror Cutts did not constitute deficient performance within the boundaries of Strickland. See Occhicone, 768 So.2d at 1048; see also Strickland, 466 U.S. at 691, 104 S.Ct. 2052 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

3. Failure to Present Codefendant Paul's Testimony
Cole alleges that trial counsel should have presented codefendant Paul's *416 testimony because the evidence of Cole's guilt was mainly circumstantial.
The trial court found after the evidentiary hearing that:
1. William Paul testified at depositionwherein he was actively questioned by Defendant's trial counselthat Defendant was the individual who killed John Edwards and raped Pam Edwards. William Paul's deposition testimony was consistent with his statement to law enforcement immediately after his arrest.
2. Pam Edwards testified at trial that the Defendantnot William Paul killed John Edwards and raped her. Pam Edwards' trial testimony was consistent with William Paul's deposition testimony and his statement to law enforcement.
3. William Paul wrote a letter to both Defendant's trial counsel and counsel for the State and informed them that he would not willingly testify for either party.
4. Defendant's trial counsel had no reason to believe that William Paul's testimony would be helpful to his client. Therefore, he made a tactical decision not to call William Paul as a witness. Defendant, who had been supplied with a copy of Paul's deposition by his trial counsel, concurred with counsel's decision.
State v. Cole, No. 94-498-CF, order at 3 (Fla. 5th Cir. Ct. order filed May 24, 2000).
We find that there is competent, substantial evidence supporting the trial court's finding that trial counsel's decision was tactical. Trial counsel testified at the evidentiary hearing that he had taken Paul's deposition, that he was aware of the substance of Paul's statement to Marion County deputies, and that he was familiar with the physical evidence in the case. Prior to trial, trial counsel and Cole extensively discussed whether Paul should testify. Trial counsel testified that Cole reviewed Paul's statement and letter. Trial counsel concluded that having Paul testify would not help Cole, and counsel discussed with Cole the advantages and disadvantages of having Paul testify. At that time, Cole agreed with counsel not to have Paul testify. Thus, we find no error in the trial court's conclusion that Cole failed to demonstrate that trial counsel performed deficiently. See, e.g., Occhicone, 768 So.2d at 1048.

4. Failure to Contemporaneously Object to Prosecutor's Opening Statement
Cole's fourth subclaim asserts trial counsel's failure to contemporaneously object to the prosecutor's opening statement during the guilt phase.[5] Trial counsel did not immediately object. Instead, at the conclusion of the prosecutor's opening statement, counsel moved for a mistrial, citing the prosecutor's "mankind at its worst" statement made during the opening statement. The trial court denied the motion but offered a curative instruction, which trial counsel declined. Cole argues that counsel's failure to immediately object to the "mankind at its worst" comment and *417 counsel's failure to accept the curative instruction constituted ineffective assistance.
Cole's claim must rely on counsel's decision not to contemporaneously object and not on a failure to object because counsel moved for a mistrial at the conclusion of the prosecutor's statement. Thus, Cole must demonstrate that his counsel performed deficiently and that he was prejudiced by counsel's decision to wait until the conclusion of the prosecutor's opening statement before moving for a mistrial on the basis of the prosecutor's argument. Likewise, Cole must demonstrate that counsel performed deficiently and that he was prejudiced by counsel's decision to decline the curative instruction.
Trial counsel testified at the evidentiary hearing that he decided to wait until after the opening statement so that the comment would not be emphasized and also testified that the curative instruction in this case would have had the effect of repeating the offensive comment. We find that competent, substantial evidence supports the trial court's conclusions that trial counsel's decision to wait until the conclusion of the prosecutor's opening statement before moving for mistrial was tactical as well as counsel's decision to decline the curative instruction. We find no error in the trial court's ruling that Cole was not entitled to Strickland relief because Cole failed to demonstrate that his counsel performed deficiently. We also conclude that Cole has failed to demonstrate that he was prejudiced.

5. John Thompson
Next, Cole asserts that trial counsel was ineffective for calling John Thompson as Cole's only witness during Cole's case-in-chief, thereby losing the right to the rebuttal argument. While the specific claim relates to witness John Thompson, an examination of this claim also involves witness Mary Gamble.
Both Thompson and Gamble, who did not previously know each other, met each other and Cole months prior to the murder and rape while they and others jointly lived at the Salvation Army in Marion County. Gamble and Cole formed a friendship and engaged in sexual relations, and after Cole's arrest, Gamble visited Cole at the jail. Gamble testified during the State's case-in-chief that while she visited Cole in jail, he confessed to her that he raped Pam Edwards and slit John Edwards' throat. Thompson had driven Gamble to the jail to visit Cole. Counsel called Thompson during Cole's case-in-chief to have Thompson testify that Gamble never told him that Cole confessed to the murder, even though he drove Gamble to the jail.
The record establishes that Thompson was the State's fifteenth trial witness, and Gamble was the State's eighteenth witness. Thompson testified, when called by the State, that he drove Gamble to the jail to see Cole while Cole was awaiting trial. When Thompson testified for the State, the State did not elicit any testimony concerning any conversation Gamble had with Cole at the jail. When Gamble later testified, she testified that Cole confessed to committing these crimes. Thus, trial counsel called Thompson as a witness for the defense so that Thompson could testify that Gamble never told him that Cole confessed. Cole contends that trial counsel should have elicited the testimony impeaching Gamble during Thompson's cross-examination, when Thompson was a State's witness and prior to Gamble's testimony. We do not agree because the record shows that at the time Thompson testified there was no predicate in the record upon which Gamble could be impeached.
At the evidentiary hearing, trial counsel testified that he knew by calling Thompson trial counsel was losing the right to a *418 rebuttal closing but thought that the benefit of having Thompson refute Gamble, the only person who testified that Cole confessed, outweighed the benefits of giving the rebuttal argument. We find there to be competent, substantial evidence supporting the trial court's finding that counsel's decision to call Thompson was tactical. We find no error in the trial court's conclusion that Cole failed to demonstrate how his trial counsel performed deficiently under Strickland and therefore is not entitled to relief on this claim.

6. Cumulative Error
Cole's last subclaim to this issue is that cumulative error occurred during the guilt phase. Because all of Cole's guilt phase issues are either meritless or procedurally barred, there is no cumulative error to consider. See Melendez v. State, 718 So.2d 746, 749 (Fla.1998). Our resolution of the cumulative error subclaim is upon a review of all guilt phase issues and not limited to the subclaims raised in claim six.

B. Guilt Phase Ineffective Assistance Claims Denied Without an Evidentiary Hearing
In his first claim, Cole raises numerous arguments, alleging trial counsel's ineffectiveness, which the trial court summarily denied without an evidentiary hearing. We address here only subclaim seven, the subclaim relating to the guilt phase. We will address the remaining subclaims to this claim in the penalty phase section of this opinion.
Cole's seventh subclaim is that trial counsel failed to object to hearsay statements made by Dan Jackson and Deputy Tammy Jicha. Dan Jackson was the motorist that Pam Edwards flagged down when fleeing the national forest. He testified that while driving Pam out of the forest to call the police that "she said that she had been tied up and raped." Tammy Jicha was a deputy with the Lake County Sheriff's office and responded to Pam's telephone call. Deputy Jicha testified that even though she determined that the alleged crimes occurred in Marion County and not in Lake County, she continued talking with Ms. Edwards to determine whether Ms. Edwards was reporting real events or making a false crime report. Deputy Jicha further testified, "I felt like she was telling the truth, because everything just added up, right down the line." Counsel did not object to these statements.
Cole contended in his rule 3.850 motion that the failure to object to these statements allowed the State to improperly bolster Ms. Edwards' credibility and that the prejudice was the extra weight the jury likely gave her testimony. The trial court ruled that the rule 3.850 motion contained insufficient allegations as to prejudice and that the allegations made were entirely speculative. On the basis of the evidence in the trial record, we find no error in the trial court's denial of this claim for lack of prejudice. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The trial record contains substantial other evidence corroborating Pam's testimony that she had been tied up and raped. Mary Gamble testified that Cole confessed to raping Pam. Nails removed from the trees where Pam was tied up were introduced into evidence, and twine was still attached to one nail. Accordingly, Cole is not entitled to Strickland relief on this claim. See Arbelaez v. State, 775 So.2d 909, 914 (Fla.2000); see also Gudinas v. State, 816 So.2d 1095,1101 n. 6 (Fla.2002) (finding no error in trial court's summarily denying legally sufficient claims where claims were conclusively refuted by trial record).

C. Alleged Brady Violation
Cole raises a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), argument as his ninth claim. The *419 trial court conducted an evidentiary hearing on this claim. Eleanor Simpson testified at the evidentiary hearing that at the conclusion of the oral argument in the direct appeal of Cole's conviction and sentence, she talked with Brad King, the elected state attorney who prosecuted Cole.[6] She maintains that she asked King why he did not call Paul to testify and that King replied that he was afraid that Paul would attempt to take blame for the entire incident.
King testified at the evidentiary hearing that he briefly spoke with Simpson. In response to Simpson's question as to why King did not put Paul on the stand, King testified that he said, "I didn't need to, that we had a good case without him; he was there and could have been called, but I chose not to call him because I could never tell for a certainty what he would say if he testified." King further testified that he never had an indication that Paul slit John Edwards' throat and that King had always been convinced it was Cole who actually killed John.
In its final order denying Cole's rule 3.850 motion, the trial court also found that the State provided the defense with all statements made by Paul and that trial counsel deposed Paul, knew that Paul would not willingly testify for either the State or Cole, and knew that Paul pled guilty to murder in exchange for a life sentence. The trial court then determined, "The State did not have any information on Mr. Paul-favorable to the Defendant or otherwise-which it did not provide to the defense." State v. Cole, No. 94-498-CF, order at 10 (Fla. 5th Cir. Ct. order filed May 24, 2000). Competent, substantial evidence exists in the record supporting the trial court's findings. Thus, we find no error in the trial court's denial of this claim.

D. Remaining Guilt Phase Claims
In his seventh claim on appeal, Cole seeks a DNA test. Cole did not include this claim in his rule 3.850 motion; instead, Cole made an oral request for the DNA testing at the Huff hearing. The trial court summarily denied Cole's request without explanation. We note that the trial court's denial of Cole's DNA request came prior to the effective date of section 925.11, Florida Statutes (2001), and Florida Rule of Criminal Procedure 3.853 (DNA testing). We do not address Cole's request for relief at this time except to state that our decision should not be read to prohibit Cole from seeking such testing pursuant to the mandates of section 925.11 and rule 3.853.
We find Cole's tenth claim, that Cole should be allowed to contact the jurors in an attempt to determine juror misconduct and that the ethical prohibition preventing Cole from contacting the jurors is unconstitutional, to be procedurally barred. See Arbelaez v. State, 775 So.2d 909, 920 (Fla.2000) (explaining that an identical claim was procedurally barred as it could have and should have been raised on direct appeal).
Having considered all of Cole's guilt phase issues, we affirm the trial court's denial of the 3.850 motion in respect to the guilt phase of Cole's trial.

III. RULE 3.850 MOTION-PENALTY PHASE

A. Failure to Request Statutory Mental Mitigators
In his claim two, Cole argues that his trial counsel was ineffective during the penalty phase for failing to request and argue the statutory mental mitigators: (1) the capital felony was committed while the *420 defendant was under the influence of extreme mental or emotional disturbance; and (2) the capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired. Cole maintains that there was some evidence adduced during the guilt and penalty phases which supported both mitigators. After an evidentiary hearing on this claim, the trial court denied relief, finding that Cole had failed to establish prejudice. We find no error in the trial court's conclusion that Cole had failed to demonstrate prejudice in respect to the ineffectiveness claim and is therefore not entitled to Strickland relief.
The State initially argues that this issue is procedurally barred because trial counsel conceded the nonexistence of the two statutory mental mitigators and that jury instruction issues must be raised on direct appeal. Alternatively, the State contends that Dr. Berland's testimony did not establish that these mitigators existed, and even if it did, Cole suffered no prejudice given the enormity of the aggravating circumstances. We reject the State's argument that this issue is procedurally barred. The failure to request jury instructions is properly evaluated in a rule 3.850 motion for ineffective assistance of trial counsel. This claim is not procedurally barred by the direct appeal because the trial court was never requested to make a ruling on the instructions at trial.
Thus, we proceed to the merits of this claim. The trial record reveals that Dr. Robert Berland, a board certified forensic psychologist, performed a mental health examination of Cole. Dr. Berland performed clinical interviews of Cole; talked with family members, although some would not talk to him; reviewed a Minnesota Multiphasic Personality Inventory (MMPI) administered in November of 1988; and reviewed voluminous material from Ohio State Prison regarding Cole. Dr. Berland also conducted extensive psychological testing of Cole. As part of this psychological testing, Berland administered to Cole two additional MMPIs and a Wechsler Adult Intelligence Scale test (WAIS). The WAIS result was that Cole's full scale IQ was scored at 98. From Dr. Berland's first MMPI administration, Dr. Berland concluded that some mental disturbance existed but that he could not diagnose the extent of the problem because Cole was not truthful in his answers. Dr. Berland thereafter administered a second MMPI to Cole. From administration of the second MMPI, Dr. Berland concluded that Cole had a biologically caused manic type disturbance with an indication of delusional paranoid thinking. Dr. Berland testified that he could not be more specific as Cole attempted in the second MMPI to understate the severity of his problems. However, a careful reading of Dr. Berland's testimony shows that Dr. Berland did not testify as to his opinion of whether the two statutory mitigators applied to Cole's murder of John Edwards.
The trial court in its sentencing order specifically rejected the existence of either statutory mental mitigator.
2. The murder of John Edwards was not committed while the Defendant was under the influence of extreme mental or emotional disturbance. The defense expert, Dr. Robert Berland, a forensic psychologist, testified that the Defendant exhibits symptoms of some form of organic brain damage and mental illness. However, the doctor was unable to establish that such significantly influenced the acts of the Defendant. Though the evidence indicates that the Defendant may have consumed some alcoholic beverages and smoked marijuana on or about the date of the commission of the *421 offense, that evidence is insufficient to establish that such influenced the Defendant's actions in a mitigating manner.
. . . .
6. The Defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was not substantially impaired. As stated above, Dr. Berland testified that the Defendant exhibited signs of organic brain damage and mental illness; however, such did not affect the Defendant's ability to control the circumstances or understand the consequences of his actions.
State v. Cole, No. 94-498-CF-A-X, order at 5-6 (Fla. 5th Cir. Ct. order filed Dec. 20, 1995). Thus, the trial court when sentencing Cole concluded that these two statutory mental mitigators did not exist. The trial court in the same sentencing order then evaluated this evidence as nonstatutory mental mitigation.
2. The Defendant presented expert testimony through Dr. Robert Berland, a forensic psychologist, as to Defendant's organic brain damage and mental disabilities. Dr. Berland testified that the test scores and test taking attitude indicated that the Defendant lied and exaggerated his responses in an attempt to manipulate the results. However, based on additional indicators which are more difficult to skew, the doctor found some indication of mental illness and psychosis, but could not determine the severity of either due to the untruthfulness and exaggeration of the Defendant's responses. Interviews with family members and lay witnesses did not confirm any prior history of mental illness, nor was there independent evidence of brain injury or fetal alcohol syndrome.
Dr. Berland testified that mental illness may cloud a person's perception of the world and judgments, but that the Defendant was not delusional or controlled by hallucinations. Further, alcohol and marijuana may intensify the symptoms of psychosis. Although there was evidence that the Defendant had been drinking prior to the murder, there was no evidence that such affected the Defendant's ability to understand the consequences of his actions and control of the circumstances. Also, Dr. Berland testified that the Defendant was of average intelligence. Any brain damage affecting the Defendant's intelligence quotient would only decrease the score down to a normal finding.
Upon evaluating the testimony, the Court finds that the Defendant has established the mitigating factors of organic brain damage and mental illness by the greater weight of the evidence. However, the testimony has failed to establish that such affected the Defendant's judgment in any significant manner. Dr. Berland was unable to definitively connect any psychotic influence on the Defendant's criminal acts. Therefore, the Court can only attach slight to moderate weight to this mitigating factor.
Id. at 7-8.
At the evidentiary hearing no expert evidence was presented that counsel was deficient on the basis of the trial record for not requesting jury instructions on these two statutory mental mitigators. Based upon Dr. Berland's testimony, the trial court's sentencing order, and the rule 3.850 evidentiary hearing record, we find no error in the trial court not granting relief on this claim.

B. Mental Health Examination Claims
Cole's third, fourth, and fifth claims all relate to trial counsel's alleged failure to secure an adequate mental health examination *422 for Cole. The claims raised in Cole's initial brief in this appeal generally allege that trial counsel failed to provide adequate information to Dr. Berland, and for that reason, Dr. Berland could not competently diagnose the extent of Cole's brain damage; that trial counsel did not hire Dr. David M. Bortnick, a neuropsychologist, soon enough for trial preparation; that Dr. Bortnick spent too little time on Cole's case to do an adequate examination; and that the trial court erred in accepting at the rule 3.850 evidentiary hearing only a proffer from another neuropsychologist, Dr. Henry Dee. It must be noted that these claims differ materially from the claims presented in the rule 3.850 motion.
In his rule 3.850 motion, Cole alleged:
6. Counsel hired Dr. Berland to examine Mr. Cole for mental illness. Though the results of Dr. Berland's tests were somewhat muddled because Mr. Cole was not answering the questions honestly, the results indicated at least some mental illness and definite brain damage. Counsel should have known further inquiry into brain damage was necessary because Dr. Berland testified at trial, "I can tell you from this MMPI that the problem appears to exist in spite of his efforts to fake his problems. But I cannot tell you how serious a disturbance it is. It's there, but I have no way of telling you whether it's a very severe problem or a mild problem." Dr. Berland made other references to the fact that Mr. Cole had brain damage. Counsel should have known Dr. Berland was not qualified to investigate and establish the extent and effects of the brain damage because he is a forensic psychologist and not a neuropsychologist, and counsel should have hired a neuropsychologist trained to determine organic brain injury.

7. Only a neuropsychologist can administer the tests which provide objective results establishing brain damage. Trial counsel was ineffective for not hiring a neuropsychologist to examine Mr. Cole. To fully investigate the brain damage and act as effective counsel, counsel was obligated to hire an expert or have tests performed which could determine the extent of damage and explore its effects as mitigation. This was especially true in Mr. Cole's case because Dr. Berland's results were questionable and subject to challenge due to Mr. Cole's possible malingering.
(Emphasis added and record citations omitted.)
Following the evidentiary hearing, the trial court ruled:
Defendant alleges that counsel was ineffective for failing to hire a neuropsychologist to determine the extent of Defendant's brain damage and to present evidence of said brain damage. Defendant alleges prejudice because, if counsel had hired a neuropsychologist, Defendant could have presented sufficient mitigating evidence to result in a life sentence.
Upon consideration of the evidence presented at hearing, the Court finds the following facts in relation to this claim:
1. Dr. Berland, a forensic psychologist, was hired by Defendant's trial counsel and testified extensively during the sentencing hearing in this cause. Dr. Berland testified that Defendant had a mental illness and probably had some indeterminate brain damage.
2. This Court found that Defendant suffered from organic brain damage and mental illness and accorded this mitigating factor slight to moderate weight in its written order *423 in support of the death sentence.
3. Defendant's trial counsel hired a neuropsychologist, Dr. Bortnik [sic], as a confidential defense expert. Dr. Bortnik informed Defendant's trial counsel that Defendant was "neurologically sound."
4. Defendant's trial counsel reasonably relied upon Dr. Bortnik's opinion. Defendant's trial counsel made a tactical decision not to request a written opinion from Dr. Bortnik-a written opinion which would not be beneficial to his client.
Therefore, Defendant has failed to demonstrate that his trial counsel's performance was deficient as it relates to this issue. Accordingly, he has failed to demonstrate ineffective assistance of counsel.
State v. Cole, No. 94-498-CF, order at 6 (Fla. 5th Cir. Ct. order filed May 24, 2000).
The record reveals that Dr. Berland, a board certified forensic psychologist, was Cole's main mental health expert. Trial counsel hired Dr. Bortnick, a neuropsychologist, to evaluate Cole for possible brain damage after Dr. Berland advised that he could not determine the extent of Cole's brain damage on account of Cole's lack of candor and evasiveness during Dr. Berland's interviews of Cole. Dr. Berland also performed those tests, clinical interviews, and reviews previously detailed. Dr. Berland explored various issues such as head injuries, fetal alcohol syndrome, and other events which could have caused brain damage. Documentation provided at the evidentiary hearing established that trial counsel provided Dr. Berland with 44.52 pounds of documentary materials.
With respect to Cole's claim in the rule 3.850 motion alleging a failure to hire a neuropsychologist, we find that there is competent, substantial evidence supporting the trial court's finding that trial counsel did indeed hire Dr. Bortnick, a neuropsychologist. It is correct that trial counsel thereafter made a tactical decision not to call Dr. Bortnick. But we find no error in the denial of relief as to this claim in view of the claim presented to the trial court and the record.
Cole next argues that he did not receive effective mental health assistance as required by Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). This claim was not presented in this form to the trial judge; however, on the basis of the record, we conclude there is no basis for relief under Ake.
Cole then asserts that the trial court denied him a full evidentiary hearing by limiting Dr. Dee's testimony to a proffer. The transcript of the evidentiary hearing is explanatory of what occurred.
MR. KILEY (CCRC):.... I think the Court now needs to address the issue of whether or not we can call Dr. Berland and Dr. Dee.
. . . .
Your Honor, I would submit to this Court, respectfully, that Dr. Berland, this Court probably could rely on what he testified at trial.
. . . .
But I think we should be allowed to at least "proffer the testimony of Dr. Dee

. . . .
And I think we need to be able to proffer evidence to this Court that Dr. Dee did perform certain tests on Mr. Cole and his findings.
. . . .
I do think it is more important for us to call Dr. Dee to proffer his testimony.
. . . .

*424 MR. McCUNE (Assistant State Attorney):....
... [T]he issue as pled and which was made subject to the Court's order pertaining to the scope of this hearing today was effectiveness of trial counsel and failing to hire a neuropsychologist.
. . . .
.... Mr. Gleason [Cole's trial counsel], clearly hired a neuropsychologist and relied on that neuropsychologist to do whatever neuropsychologists do.
And now Mr. Kiley is trying to make the issue become the adequacy of the neuropsychologist....
. . . .
MR. KILEY:....
. . . .
Now, with regards to Dr. Dee, Judge, they knew this was coming. We listed Dr. Dee....
.... I think we should be at least allowed to proffer the testimony of Dr. Dee....
. . . .
MR. McCUNE: If they want to proffer, they can proffer, Your Honor, but I can't cross-examine. We haven't taken a deposition, we haven't seen any records from Dr. Dee reflecting what he's done in the case.
THE COURT: Is he in the courthouse?
MR. KILEY: He's in the courthouse, Judge....
THE COURT: You can proffer it. But here is a man who wasn't evenan expert who wasn't even called to the trial.
Mr. Gleason explains what his actions were on getting a neuropsychologist or neuropsychiatrist to help him, and he had made the decision that he wasn't going to at that time.
(Emphasis added.) At the close of all the evidence at the evidentiary hearing, Cole's counsel was allowed to argue from Dr. Dee's testimony even though it was only proffered. In light of trial counsel requesting an opportunity to proffer this evidence, we cannot find that the trial court erred in allowing what counsel requested. Moreover, because Dr. Dee's testimony is in the record, the procedure used resulted in no prejudice to Cole.

C. Penalty Phase Ineffective Assistance Claims Denied Without an Evidentiary Hearing
In his first claim, Cole raises numerous arguments, alleging trial counsel's ineffectiveness, which the trial court summarily denied without an evidentiary hearing.

1. Failure to Present Evidence of Drug and Alcohol Abuse
In his first subclaim, Cole posits that trial counsel should have presented evidence of Cole's long-term history of drug and alcohol abuse. Cole argues that even though counsel presented evidence of marijuana abuse, counsel should have presented evidence of additional drug use. In ruling on Cole's rule 3.850 motion, the trial court in its detailed order stated:
Defendant alleges that counsel was ineffective for failing to present evidence of Defendant's history of alcohol and drug abuse during the penalty phase of this trial. In addition, Defendant alleges that trial counsel was ineffective for failing to call William Paul to testify as to alcohol and drug use by the Defendant at the time of the crime. Defendant alleges that evidence of past alcohol and drug abuse, as well as evidence of alcohol and drug use at the time of the crime, was a mitigating factor and that presentation of this evidence would have resulted in a life sentence.

*425 Upon review of the record, it is clear that trial counsel presented extensive evidence of Defendant's history of alcohol and drug use during the penalty phase. Ann Marie Powers, Defendant's [stepsister], testified that Defendant had a marijuana problem from age 12. Beverly Jean Helm, who was a foster parent for Defendant at one time, testified that Defendant had an alcohol and drug problem while he lived with her and that this problem continued after Defendant left her care. Ms. Helm also testified that when she last saw Defendant, he appeared to have a long-term problem with marijuana. There was also ample evidence presented during the guilt phase that Defendant used alcohol and marijuana immediately before, during, and after the crimes. Allen Detwiler testified that before Pam and John Edwards were attacked, Defendant bought a case of beer when Detweiler [sic] took him to the store. Pam Edwards testified that Defendant told both she and her brother that Defendant and Paul had a lot to drink. Pam Edwards testified Defendant's campsite had a lot of empty beer cans. Pam Edwards testified that during her abduction she saw Defendant smoke marijuana. Danielle Zimmerman testified that she saw Defendant smoke marijuana after the murder of John Edwards.
In addition, Dr. Berland testified about the effects of drug and alcohol on someone who had mental illness. Trial counsel presented argument that alcohol and marijuana affected Defendant in relation to his mental illness during the penalty phase of the trial.
Defendant's allegation that his counsel was ineffective for failing to present evidence of alcohol and drug use is amply refuted by the record. Any additional evidence of drug and alcohol use would have been cumulative of that actually presented.
State v. Cole, No. 94-498-CF, order at 8-9 (Fla. 5th Cir. Ct. order filed Feb. 18, 2000) (footnote and record citations omitted).
We find no error in the trial court's conclusion that Cole was not entitled to an evidentiary hearing to present what the trial court found would have been cumulative evidence. See Valle v. State, 705 So.2d 1331, 1334-35 (Fla.1997) (affirming trial court's summary denial of ineffective assistance claim based on allegation that trial counsel failed to present cumulative evidence).[7]

2. Failure to Present Evidence of Childhood Abuse
Cole next contends that trial counsel failed to present evidence of child abuse. For example, Cole specifically asserts that his mother should have been called as a witness. In ruling on Cole's rule 3.850 motion, the trial court explained:
Defendant alleges that trial counsel was ineffective for failing to present sufficient mitigating evidence of child abuse and Defendant's poor upbringing. Specifically, Defendant states that trial counsel was deficient for failing to call Defendant's mother, Ann Cole, during the sentencing phase. Defendant alleges that sufficient evidence of childhood abuse would have resulted in substantial mitigation and a life sentence.
Trial counsel presented extensive evidence of Defendant's childhood abuse and poor upbringing during the sentencing *426 phase of this case. Andrea Jane Headlee, Defendant's step-sister, testified that she lived in the same household as Defendant until he was 12. She testified that during that time both she and the Defendant were placed in foster homes more than once, that Ann Cole (Defendant's mother) was sent to prison during their childhood, that Defendant's father, Don Cole, was an alcoholic, and that Don and Ann Cole fought frequently during their marriage. Ann Marie Powers, another one of Defendant's step-sisters, testified that she lived in the same household as Defendant until he was 8. She testified that during that time the children were placed in foster homes at least twice, that Ann Cole was sent to prison one of those times, that Don Cole abused alcohol and that alcohol made him abusive, and that Don and Ann Cole fought frequently and that these fights included physical altercations. Don Cole, Defendant's father, testified that Defendant lived with him until Defendant was three or four. He testified that during that time Ann Cole was physically abusive towards the children and that she exhibited signs of mental illness.
Defendant's allegations that his counsel was ineffective for failing to present evidence of childhood abuse and poor upbringing is amply refuted by the record. Any additional evidence of childhood abuse would have been cumulative of that actually presented. Additionally, this Court specifically inquired of Defendant as to whether he wanted his mother to testify on his behalf during [the] sentencing hearing. Defendant unequivocally stated that he did not wish his mother to testify. Defendant cannot now be heard to complain that his trial counsel was ineffective for not calling his mother to testify when Defendant himself specifically stated that he did not wish his mother to testify.
State v. Cole, No. 94-498-CF, order at 10-11 (Fla. 5th Cir. Ct. order filed Feb. 18, 2000) (footnote and record citations omitted).
We find no error in the trial court's determination that Cole's claim is refuted by the trial record and that the evidence which Cole now asserts should have been presented would have been cumulative. See Valle, 705 So.2d at 1334-35. As to Cole's specific claim about his mother, the record establishes that the trial court offered to send a deputy to pick up Cole's mother, who was under subpoena, but Cole on the record unequivocally declined the trial court's offer after conferring with trial counsel.

3. Failure to Object During Penalty Phase Closing
Cole claims that trial counsel failed to object to prosecutorial misconduct during penalty phase closing argument. Cole argues that the prosecutor told the jury that William Paul could not have cut John Edwards with a knife, as Paul's hand was "broken," and that the statement was inaccurate because Paul's left hand was hurt but was not broken. In rejecting this claim, the trial court found:
The evidence in this cause demonstrates that Paul's hand was not broken. However, it is also clear that Paul's hand was badly injured after the initial altercation with John Edwards. Pam Edwards testified that Paul was moaning and said he thought his hand was broken. She also testified that Defendant had her roll a joint for Paul because his hand was cut and swollen. John Tomson [sic] testified that when Defendant and Paul arrived at his trailer, he noticed Paul was in pain and that his hand was swollen and "quite large." Mary Gamble testified that when Paul arrived *427 at the trailer his hand was "very swollen up" and "he could barely move it." The evidence demonstrates that even though Paul's hand was not broken, it was injured to the point that he may have had difficulty using it. Therefore, even though the prosecutor's statement that Paul's hand was broken was technically incorrect, it was not prejudicial to the outcome. Therefore, trial counsel's failure to object to the broken hand comment was not prejudicial.
State v. Cole, No. 94-498-CF, order at 12-13 (Fla. 5th Cir. Ct. order filed Feb. 18, 2000) (record citation omitted). We find no error in the trial court's determination in respect to this subclaim that Cole is not entitled to any relief.

4. Failure to Request a HAC Limiting Construction Instruction
Cole asserts that trial counsel should have requested a limiting instruction for the heinous, atrocious, or cruel (HAC) aggravator. Cole contended in his rule 3.850 motion that actions taken after a victim becomes unconscious or after the victim dies cannot support the HAC aggravator. Cole maintains in the instant case that, although trial counsel raised the issue that John Edwards could likely have been unconscious when his throat was cut, counsel was ineffective to the extent that trial counsel did not present the trial court with case law that entitled Cole to an instruction that the jury could not consider actions after the victim was unconscious. Cole cites Jackson v. State, 451 So.2d 458, 463 (Fla.1984), to support his position.
Cole is correct that we have held that events occurring after the victim's loss of consciousness or death are not relevant to the HAC aggravator determination. See Jackson, 451 So.2d at 463. The record reflects that trial counsel requested and the trial court instructed the jury that events occurring after the victim's death were not relevant for the HAC aggravator. Thus, Cole's ineffective counsel claim can only rest upon trial counsel's alleged failure to request a further limiting instruction that would have advised the jury that events occurring after the victim's loss of consciousness are not relevant for the HAC aggravator.
However, as indicated by the trial court in denying this rule 3.850 claim, the trial court in its sentencing order found there to be sufficient acts that occurred while the victim was conscious for the HAC aggravator to be established beyond a reasonable doubt. This Court on direct appeal affirmed the finding of HAC beyond a reasonable doubt. See Cole, 701 So.2d at 852. In doing so, we quoted and adopted the trial court's factual finding that John Edwards was conscious at the time Cole slit John's throat and that John subsequently lived for several more minutes while gasping for air. See id. ("John was conscious for several minutes while he gasped [for] air from a severed windpipe slow[ly] filling with blood."). Thus, again, we find no error in the trial court's granting no relief on this claim.

5. Failure to Introduce Codefendant Paul's Life Sentence
Cole next claims that trial counsel was ineffective for failing to introduce into evidence codefendant Paul's life sentence. Cole submits that the jury would have probably sentenced Cole to life had the jury known of the disparate sentence. We agree with the State that this issue is procedurally barred, as we addressed the disparate treatment argument on direct appeal and found it to be without merit. See Cole, 701 So.2d at 852 ("With respect to the disparate treatment, we agree with the trial court's conclusion that since Cole was the dominant actor and the one who committed the actual murder, the *428 codefendant's life sentence was not a mitigating factor."). Moreover, it is clear from the on-the-record statements by Cole and his counsel during trial that the decision not to put on this evidence was influenced by the fact that presenting such evidence would have opened the door to other, harmful evidence. Specifically, the State would have then been permitted to call witnesses to explain the difference between the actions of Paul and Cole. See Gore v. State, 706 So.2d 1328, 1335-36 (Fla.1997). In view of the present record, Cole has no basis upon which to claim this decision was a result of an error by his trial counsel. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

6. Failure to Request Co-Counsel
Cole's next claim is that trial counsel should have hired co-counsel to assist with the penalty phase. We find that this subclaim is legally insufficient because Cole has alleged neither deficient performance nor resulting prejudice for the trial court's failure to secure co-counsel. The claim as alleged is:
35. Counsel was ineffective for not requesting the assistance of co-counsel. This was the first penalty phase Mr. Gleason had tried as lead counsel. His ineffective presentation of mitigating evidence could have been done effectively if he had the assistance of an experienced co-counsel as recommended by the ABA Standards for Criminal Justice 5-6.1
36. Counsel's ineffective performance, which was compounded by the absence of co-counsel, is evident in the bench conference during which counsel relied on Mr. Cole to make the legal decision of what evidence to present. Counsel's ineffectiveness forced Mr. Cole to make the legal decision not to enter Mr. Paul's life sentence as evidence. If the jury heard that Mr. Paul, who possessed the murder weapon and whose fibers were found on the victim, received a life sentence, it is likely they would have given Mr. Cole a life sentence.
(Record citation omitted.)
The only prejudice alleged by Cole with any specificity concerns the presentation of Paul's life sentence. However, as noted above, Cole is not entitled to relief on that claim. The general allegation that mitigating evidence could have been better presented is an insufficient allegation of prejudice. As Cole makes no further allegation of prejudice relating to this subclaim, Cole has failed to demonstrate that his counsel was ineffective for failing to request co-counsel.

D. Remaining Penalty Phase Claims
In his claim eight, Cole asserts that the trial court impermissibly relied upon nonstatutory aggravating factors when sentencing Cole and that Cole is therefore entitled to a new sentencing proceeding. Cole points to the trial court's final order denying the rule 3.850 motion in which the trial court stated:
10. The jury's advisory verdict of death was unanimousdespite the fact that it was instructed upon and given evidence of non-statutory mitigating circumstances. Extensive statutory and non-statutory aggravating circumstances were prevented [sic].
State v. Cole, No. 94-498-CF, order at 9 (Fla. 5th Cir. Ct. order filed May 24, 2000) (emphasis added).[8] On direct appeal, Cole *429 raised numerous challenges to aggravating and mitigating circumstances, which we rejected. See Cole, 701 So.2d at 851-53. Cole did not contend on direct appeal that the trial court considered nonstatutory aggravating circumstances in its imposition of the death penalty, and we clearly identified that the trial court only considered four statutory aggravating circumstances in its evaluation of the imposition of the death penalty. See id. at 849 n. 1. We agree with the State that Cole's current argument is procedurally barred as the issue could have and should have been raised on direct appeal. See, e.g., Hall v. State, 541 So.2d 1125, 1126 n. 1 (Fla.1989).
Cole's eleventh claim is that he is entitled to an evidentiary hearing to explore trial counsel's failure to litigate the unconstitutional nature of the aggravating circumstances. He maintains that because of his robbery conviction, he was automatically eligible for the death penalty, that the jury instructions improperly shifted the burden to Cole to prove mitigating circumstances, that section 921.141(5), Florida Statutes (1993), is unconstitutionally vague, and that the jury instructions precluded the jurors from considering the totality of the circumstances, in violation of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We agree with the State's position that these issues are procedurally barred, as they could have and should have been raised on direct appeal. See Asay v. State, 769 So.2d 974, 989 (Fla.2000).
Lastly, Cole argues that cumulative error requires reversal of the death sentence and a new sentencing proceeding. We disagree and find that Cole is not entitled to relief under Strickland on this claim.

IV. PETITION FOR WRIT OF HABEAS CORPUS
This Court's habeas corpus standard of review for ineffective assistance of appellate counsel claims mirrors the Strickland standard for trial counsel's ineffectiveness. See Jones v. Moore, 794 So.2d 579, 583 (Fla.2001).
Initially, Cole argues that his appellate counsel was ineffective for counsel's failure to argue that Florida's death sentencing statute is unconstitutional as applied to him. In light of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Cole contends that a death sentence is not the maximum penalty under Florida's sentencing statute, and therefore Apprendi requires aggravating circumstances to be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.
Relatedly, Cole asserts that his counsel was ineffective for failing to raise the trial court's denial of Cole's motion for a statement of particulars, which sought a listing of those aggravating circumstances upon which the State would rely. Based on the reasoning of Apprendi, according to Cole, aggravating circumstances must be charged in the indictment. Cole's final Apprendi subclaim is that appellate counsel was ineffective for failing to raise the trial court's denial of Cole's request to declare section 921.141, Florida Statutes, unconstitutional and to require a unanimous jury recommendation. We have denied relief for postconviction claims based upon similar arguments. See Bottoson v. Moore, 833 So.2d 693 (Fla.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 662, 154 *430 L.Ed.2d 564 (2002); King v. Moore, 831 So.2d 143 (Fla.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002). Appellate counsel cannot be ineffective for not raising on appeal an issue with little or no merit. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000).
Cole's second habeas argument centers on the prosecutor's penalty phase closing argument, which Cole maintains constitutes fundamental error. Cole again raises the argument that the "broken hand" argument was improper and further argues that the prosecutor impermissibly argued to the jury that it should show the same amount of mercy that Cole showed his victim. The State defends the "broken hand" argument as a fair comment on the evidence and contends that the "same mercy" argument is procedurally barred and, if not barred, was similar to the argument in Kearse v. State, 770 So.2d 1119 (Fla. 2000), which this Court determined did not rise to the level of fundamental error.
We addressed the merits of the "broken hand" argument in that portion of the opinion rejecting Cole's 3.850 motion in which we agreed with the trial court's conclusion that no prejudice was demonstrated as to that unobjected-to comment. For the same reasons, we conclude that the habeas claim based on this same argument lacks merit. Regarding the "same mercy" argument, we disagree with the State that this argument is procedurally barred, as Cole maintains that the prosecutor's arguments constituted fundamental error and we have not previously addressed the merits of the claim. We find, however, that the "same mercy" argument in this case does not rise to the level of fundamental error. See Kearse, 770 So.2d at 1130.
Cole's third habeas claim is that he may be incompetent to be executed, but he concedes that the claim is premature under Florida Rules of Criminal Procedure 3.811 and 3.812. Cole asserts that he makes this argument to preserve his ability to pursue a similar claim in the federal system under In re Provenzano, 215 F.3d 1233, 1235 (11th Cir.), cert. denied, 530 U.S. 1256, 120 S.Ct. 2710, 147 L.Ed.2d 979 (2000). We agree with Cole's concession that this issue is not yet ripe, and we therefore find it to be without merit. See Brown v. Moore, 800 So.2d 223, 224 (Fla. 2001); Mann v. Moore, 794 So.2d 595, 602 (Fla.2001); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001).
Finally, in habeas claim four, Cole raises an ex post facto challenge to his death sentence and argues that electrocution remains the mandated form of execution.[9] Moreover, Cole contends that electrocution is cruel punishment or unusual punishment or both. Alternatively, in habeas claim five, Cole argues that, if lethal injection is a valid manner of execution, lethal injection is cruel or unusual or both. We summarily reject these arguments, as we previously have found similar arguments to be without merit.[10]

*431 V. CONCLUSION
Accordingly, we affirm the trial court's denial of Cole's rule 3.850 motion and deny Cole's petition for writ of habeas corpus. Our decision to deny Cole's request for a DNA test, however, is without prejudice to allow him to seek such a test consistent with the provisions of section 925.11, Florida Statutes (2001), and Florida Rule of Criminal Procedure 3.853.
It is so ordered.
WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs in result only with an opinion, in which SHAW, Senior Justice, concurs.
ANSTEAD, C.J., concurs in result only.
PARIENTE, J., concurring in result only.
I concur in result only as to the majority's analysis of whether appellate counsel was ineffective for failing to argue that Florida's death sentencing statute is unconstitutional as applied to Cole because the statute does not require a unanimous jury finding of aggravating circumstances. Appellate counsel did argue on direct appeal that a "lack of unanimous verdict as to any aggravating circumstance violates Article I, Sections 9, 16 and 17 of the state constitution and the Fifth, Sixth, Eighth and Fourteenth Amendments to the federal constitution." Appellant's Initial Brief at 84, Cole v. State, 701 So.2d 845 (Fla. 1997) (No. 87,337). On direct appeal, we summarily rejected Cole's argument concerning section 921.141, Florida's death sentencing statute. See Cole, 701 So.2d at 855-56. Therefore, this portion of Cole's ineffective assistance claim is without merit.
I also note that the jury unanimously recommended death in this case, as in King v. Moore, 831 So.2d 143 (Fla.2002). Moreover, the aggravating circumstances found by the trial court included a prior felony conviction, as in both King and Bottoson v. Moore, 833 So.2d 693 (Fla.2002), as well as commission of the murder in the course of a kidnapping, of which Cole was also convicted. Therefore, in accord with the denial of relief in King and Bottoson, I conclude that Cole does not have a viable claim under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2001), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
For these reasons, I concur in result only as to this aspect of the majority opinion.
SHAW, Senior Justice, concurs.
NOTES
[1] The trial court found the following aggravators: (1) Cole had previously been convicted of another felony; (2) the murder was committed during the course of a kidnapping; (3) the murder was committed for pecuniary gain; and (4) the murder was heinous, atrocious, or cruel (HAC).
[2] The trial court found and weighed the following nonstatutory mitigators: (1) Cole suffered from organic brain damage and mental illness, slight to moderate weight; and (2) Cole suffered an abused and deprived childhood, slight weight.
[3] In his rule 3.850 appeal, Cole argues that: (1) the trial court erred in denying Cole an evidentiary hearing on trial counsel's failure to (a) present evidence of Cole's extensive drug and alcohol abuse, (b) present evidence of childhood abuse, (c) object to prosecutorial misconduct during the penalty phase closing, (d) request an HAC limiting jury instruction, (e) introduce Paul's life sentence, (f) request co-counsel to assist with the penalty phase, and (g) object to hearsay testimony of Dan Jackson and Deputy Tammy Jicha; (2) trial counsel was ineffective for failing to request and argue two statutory mental mitigators; (3) trial counsel was ineffective for failing to have a competent neuropsychological evaluation performed on Cole; (4) Cole did not receive effective mental health assistance as required by Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (5) the trial court erred by excluding Dr. Dee's testimony during the evidentiary hearing; (6) after an evidentiary hearing, the trial court erred in not finding trial counsel ineffective during the guilt phase regarding trial counsel's (a) failure to conduct individual voir dire, (b) failure to utilize a peremptory challenge to remove juror Cutts, (c) failure to present Paul's testimony, (d) failure to contemporaneously object to the prosecutor's improper opening statement, (e) decision to only call John Thompson during Cole's case-in-chief, and (f) cumulative error as to this claim; (7) the trial court erred in refusing to allow a DNA test; (8) the trial court considered nonstatutory aggravating circumstances; (9) the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (10) Cole should be allowed to question jurors to determine if there was juror misconduct; (11) the trial court erred in failing to grant an evidentiary hearing on trial counsel's failure to litigate the unconstitutional nature of the aggravating circumstances; and (12) cumulative error exists.
[4] In his habeas petition, Cole argues that: (1) his appellate counsel was ineffective for appellate counsel's failure to argue that (a) Florida's death sentencing statute was unconstitutionally applied to him in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), (b) the trial court erred in denying Cole's motion for a statement of particulars regarding aggravating circumstances, and (c) a jury death recommendation must be unanimous; (2) the prosecutor's penalty phase closing argument constituted fundamental error; (3) Cole may be incompetent to be executed; (4) electrocution (a) remains the mandated mode of execution as the Death Penalty Reform Act of 2000 is unconstitutional, and (b) is cruel or unusual or both; and (5) lethal injection is cruel or unusual or both.
[5] The prosecution began its opening statement as follows:

On Friday, February 18th, 1994, Pam Edwards and her brother John Edwards drove to the Ocala National Forest for a weekend of camping, hiking and taking pictures with their cameras of nature.
What Pam and John Edwards found when they arrived in the Ocala National Forest on February 18th of 1994 was not nature at its best, but mankind at its worst.
[6] This conversation occurred in a public area of the Florida Supreme Court Building.
[7] We reject Cole's contention within this argument that trial counsel failed to acquire prison records. Dr. Berland testified at trial that he reviewed Ohio prison records sent to him by trial counsel. Thus, the record refutes Cole's contention that trial counsel failed to acquire Cole's prison records.
[8] In context of the trial court's entire discussion in the order, it is clear that the reference to nonstatutory aggravating circumstances was merely a scrivener's error, and in context, the reference was to nonstatutory mitigating circumstances. Moreover, there is no indication in the record that Cole attempted to bring this scrivener's error to the trial court's attention.
[9] To the extent that Cole requests an evidentiary hearing and rule 3.850 relief, that prayer for relief is improper in a petition for writ of habeas corpus. See King v. Dugger, 555 So.2d 355, 358 (Fla.1990) ("[C]laims of ineffective assistance of trial counsel should be raised under Florida Rule of Criminal Procedure 3.850, not habeas corpus.").
[10] See Sims v. State, 754 So.2d 657, 663-65 (Fla.2000) (retroactive statute authorizing lethal injection as valid mode of execution did not violate federal or state Ex Post Facto provisions); Provenzano v. Moore, 744 So.2d 413, 416 (Fla.1999) (execution by electrocution in Florida's electric chair does not constitute cruel or unusual punishment); Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000) (execution by lethal injection does not constitute cruel or unusual punishment); Sims, 754 So.2d at 666-69 (same).