904 So.2d 370 (2005)
Dwayne Irwin PARKER, Appellant,
v.
STATE of Florida, Appellee.
Dwayne Irwin Parker, Petitioner,
v.
James V. Crosby, Jr., Respondent.
Nos. SC02-1471, SC03-1045.
Supreme Court of Florida.
March 24, 2005.
As Revised on Denial of Rehearing June 2, 2005.
*372 Neal A. Dupree, Capital Collateral Regional Counsel-South and Dan D. Hallenberg, Assistant CCRC, Fort Lauderdale, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Appellee/Respondent.
*373 PER CURIAM.
Dwayne Parker, a prisoner under a sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, and he petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons stated below, we affirm in part and reverse in part the trial court's summary denial of Parker's initial motion for postconviction relief and remand for an evidentiary hearing on several issues. We also deny Parker's request for habeas relief.

FACTUAL AND PROCEDURAL HISTORY
Shortly after 11 p.m. on April 22, 1989, Ladson Marvin Preston and Dwayne Parker entered a Pizza Hut in Pompano Beach. Preston was unarmed, but Parker was armed with both a small pistol and a semiautomatic machine pistol. They forced the manager to open the safe at gunpoint, and Parker then returned to the dining room and robbed the customers of money and jewelry. Sixteen customers and employees were in the restaurant at the time. Parker fired six shots from the semiautomatic machine pistol during the robberies, wounding two customers.
While Parker was in the dining room, an employee escaped from the restaurant and telephoned 911 from a nearby business. Broward County deputies arrived shortly, and first Preston and then Parker left the restaurant. Deputy Robert Killen confronted Parker in the parking lot, and Parker fired five shots at him with the semiautomatic machine pistol. Parker then ran into the street and tried to commandeer a vehicle occupied by Keith Mallow, his wife, and three children. Parker fired the machine pistol once into the car and then fled.
When an unknown person entered a nearby bar and told the patrons that the Pizza Hut was being robbed, several of those patrons, including William Nicholson, the homicide victim, left the bar and went out into the street. Tammy Duncan left her house when she heard the shots. Duncan saw Parker carrying a gun and running down the street with Nicholson chasing after him. Duncan heard another shot and then saw Nicholson clutch his midsection and fall to the ground.
Eventually, deputies Edward Baker, Killen, and Kevin McNesby cornered Parker between two houses. McNesby's police dog subdued Parker, and he was taken to the sheriff's station. The machine pistol and some of the stolen jewelry were found on the ground when Parker was taken into custody. At the station, money and more stolen jewelry were found on Parker.
A Broward County grand jury indicted Parker on one count of first-degree murder, two counts of attempted first-degree murder, and nine counts of armed robbery. Six shell casings were found inside the restaurant, five in the parking lot, and one in the street near the spot where Nicholson fell. The State's firearms expert testified that all twelve shell casings as well as the bullet recovered from Nicholson's body had been fired from Parker's semiautomatic machine pistol. The defense argued, however, that the bullet was misidentified and that a deputy had shot Nicholson. The jury found otherwise and convicted Parker of murder and armed robbery, and on the two counts of attempted murder found him guilty of the lesser offense of aggravated battery with a firearm. The jury recommended a sentence of death by a vote of eight-to-four. The trial court agreed with the jury's recommendation and sentenced Parker to death. The trial judge found four aggravating factors: (1) Parker had a prior conviction of a violent *374 felony; (2) Parker knowingly created a great risk of death to many persons; (3) the murder was committed while Parker was engaged in committing, or during flight after committing, a robbery; and (4) the murder was committed to avoid or prevent arrest. The court found that no statutory or nonstatutory mitigating circumstances had been established. This Court affirmed the convictions and sentences. Parker v. State, 641 So.2d 369, 372-78 (Fla.1994), cert. denied, 513 U.S. 1131, 115 S.Ct. 944, 130 L.Ed.2d 888 (1995).
In 1996, pursuant to chapter 119 of the Florida Statutes, Parker requested that the sheriff provide public records relevant to the investigation of Parker's case. In response, the sheriff made certain records available on June 4, 1996. Parker filed a motion for postconviction relief pursuant to rules 3.850 and 3.851 of the Florida Rules of Criminal Procedure on March 24, 1997, and requested leave to amend the motion once the State complied with all outstanding public records requests. Subsequently, in 1998, Florida Rule of Criminal Procedure 3.852(h)(2) was enacted. Rule 3.852(h)(2) permitted capital defendants who were represented by collateral counsel as of October 1, 1998, and who had already initiated the public records process to file within ninety days of October 1, 1998, a written demand for additional public records that had not previously been the subject of a request for public records. On December 29, 1998, pursuant to rule 3.852(h)(2), Parker filed multiple, written requests for additional public records, including four separate written requests asking the sheriff to provide certain additional public records that had not been the subject of a previous public records request. The sheriff objected, and the trial court sustained the objection. On June 5, 2000, Parker filed an amended postconviction motion.
The trial court scheduled a Huff[1] hearing for April 18, 2001. Meanwhile, in March 2001, Parker filed requests for additional public records under rule 3.852(i) based upon newly discovered information of allegations of improper conduct by the sheriff's office in several murder cases. Included in the information were allegations against some of the detectives that investigated Parker's case. At the April 18 hearing, the court denied Parker's requests for additional public records. The court also denied Parker's renewed requests for the personnel and internal affairs files of the officers involved in the investigation of his case. However, the sheriff agreed to provide internal affairs records of two detectives. On February 8, 2002, the court issued a written order summarily denying all of Parker's claims. Parker filed a motion for rehearing and an amendment to the motion for rehearing, which were denied. Parker filed a timely notice of appeal. Simultaneously with the filing of Parker's initial brief in this case, he filed a petition for writ of habeas corpus.

DISCUSSION
While Parker raises fourteen issues in this appeal from the denial of postconviction relief,[2] we reverse the order of the *375 trial court solely with respect to portions of the first issue, alleging ineffective assistance of counsel at the guilt and penalty phases, and remand for an evidentiary hearing. We affirm the order with respect to the remaining issues.[3]

Issue 1: Ineffective Assistance of Trial Counsel
Parker alleges that the trial court erred in summarily denying his claims of ineffective assistance of counsel during the guilt and penalty phases of his trial. In his amended postconviction motion, Parker set forth a number of claims which he contends require an evidentiary hearing: (1) trial counsel failed to present expert testimony (a) to show that the color of the photographs showing the fatal bullet was subject to manipulation and did not reflect the true color of the bullet and (b) to refute the claim that the bullet that killed the victim was fired from Parker's gun; (2) trial counsel failed to present evidence that there were bullets fired from Parker's gun that were not accounted for and that this evidence would have supported Parker's defense that the police recovered one of these unaccounted-for bullets and switched it with the silver bullet that the medical examiner removed from the victim;[4] (3) trial counsel failed to effectively impeach the witness, Duncan, as there were inconsistencies between her testimony at trial and her prior sworn statement regarding the presence of Deputy McNesby at the time the fatal bullet was fired; and (4) trial counsel failed to competently investigate and present significant mitigation evidence of Parker's abusive childhood and serious mental illness. The trial court refused to grant an evidentiary hearing and summarily denied these claims. Parker *376 contends the court erred in summarily denying these claims because he has made facially sufficient allegations that are not conclusively rebutted by the record which demonstrate ineffective assistance of counsel. Therefore, Parker argues, we should reverse the court's order and remand for an evidentiary hearing. We agree in part and remand for an evidentiary hearing on counsel's failure to present expert testimony pertaining to the fatal bullet and on counsel's failure to fully investigate and present mitigating evidence concerning Parker's abusive childhood and his alleged mental illness.
As a general proposition, a defendant is entitled to an evidentiary hearing on any well-pled allegations in a motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. See Maharaj v. State, 684 So.2d 726 (Fla.1996); Anderson v. State, 627 So.2d 1170 (Fla. 1993); Fla. R.Crim. P. 3.850. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are insufficient to meet this burden. See Kennedy v. State, 547 So.2d 912 (Fla.1989). However, in cases where there has been no evidentiary hearing, the court must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. See Peede v. State, 748 So.2d 253 (Fla.1999); Valle v. State, 705 So.2d 1331 (Fla.1997). We must examine each claim to determine if it is legally sufficient and, if so, determine whether or not the claim is refuted by the record. It is apparent from the record that Parker's allegations of ineffective assistance of counsel based on counsel's failure to present expert testimony concerning the fatal bullet and counsel's failure to fully investigate and present mitigation evidence merit an evidentiary hearing.
When a defendant alleges ineffective assistance of counsel, he must establish the two prongs outlined by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052. In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.
Parker asserts that trial counsel should have presented expert testimony in photography and tool-marking to demonstrate that the color of the photographs depicting the bullet lodged in the victim's lower spine was subject to manipulation and did not necessarily reflect the true color of the bullet shown in the photographs. Parker alleges that it could not be established with any certainty that the bullet that killed the victim was the same bullet that was fired from Parker's gun.
Parker's claim stems from the fact that the medical examiner, Dr. Michael Bell, *377 wrote in his autopsy report that the bullet extracted from the victim was "a large caliber silver-colored bullet recovered with very little deformation." Dr. Bell later testified that the prosecutor had called him on the telephone after the autopsy and asked him to both project the picture of the bullet and analyze that projection. After doing so, Dr. Bell "realized" that he had made a mistake in his autopsy report and that the bullet was, in fact, gold-colored with a cut. The medical examiner changed his testimony during his second deposition, approximately two weeks before trial; yet defense counsel did not get an expert to examine this important piece of evidence. The medical examiner's first analysis was favorable to Parker but became unfavorable when the medical examiner changed his testimony. This fact is significant because the bullets issued to the police officers by the Broward County Sheriff's Office are silver-colored, while the bullets in Parker's gun were copper-colored. Furthermore, this contradiction bolsters Parker's claim that he was at least twenty feet from the victim at the time the witness, Duncan, heard the fatal shot, and thus he could not have been the shooter. As Dr. Bell testified, the gun that fired the fatal bullet was no more than two feet away from the victim when the fatal shot was fired.
Parker also asserts that defense counsel should have fully investigated and presented additional substantial mitigating evidence at the penalty phase. Though the record shows counsel did investigate and present mitigating evidence of Parker's childhood and intellectual capacity,[5] Parker asserts that he can present new facts and details at an evidentiary hearing which counsel failed to present at his trial. The additional mitigation would include the facts that: (1) Parker suffers from mental illness and possible organic brain damage; (2) Parker was diagnosed as borderline retarded at age fourteen and has a mental age of seven years which would likely regress under pressure; (3) test results indicated that Parker has weaknesses in his logical and abstract thinking ability along with difficulty in interpreting social situations; (4) Parker suffered from head injuries and physical trauma as a child; (5) Parker received little or no mental health assistance as a child due to his mother's own schizophrenic condition; (6) Parker suffered from severe mental distress as a *378 direct result of his being in and out of foster homes throughout his childhood because of his mother's schizophrenia; (7) Parker's mother treated him with detachment and hostility and inflicted physical abuse, including beating him with an electric cord and pouring hot water on him; (8) Parker's mother was unduly critical or, in the alternative, absolutely doting; (9) Parker was gang raped at nine years old and, on other occasions, molested by a man living in his neighborhood; (10) Parker was raped by an older man when he was fourteen years old; (11) Parker was forced to have sexual contact with animals; (12) Parker was the victim of a two-year sexual relationship with his own legal guardian when he was sixteen years old; and (13) Parker was routinely forced to submit to sexual activity with men in return for shelter when he was homeless. In comparing the mitigation evidence presented at trial with the mitigation evidence that Parker indicates he can now present, it appears that there is significant information that was never presented to the trial court which expounds upon both the abuse Parker suffered as a child and Parker's mental infirmities. He is entitled to an evidentiary hearing to present this evidence.
Parker also alleges that trial counsel failed to discover and present "available evidence" that there were bullets fired from Parker's gun that were never accounted for by police investigators. Parker contends that this evidence would have supported his defense that the police secretly recovered one of these unaccounted-for bullets and switched it with the silver bullet that the medical examiner removed from the victim. Parker asserts that his gun had the capacity to hold thirty-three bullets, and since only twelve spent cartridges were recovered at the scene and his gun had only twenty unspent cartridges remaining, then either the police planted one of the twelve spent cartridges on the victim's body in order to frame him, or the police found a thirteenth spent cartridge and planted this cartridge on the victim's body. Parker provides no factual support for these allegations but simply asserts that either one of these theories might be true. As we stated in Kennedy v. State, 547 So.2d 912 (Fla.1989):
A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.
Id. at 913. Parker's claim is conclusory, and Parker has not cited to specific facts to support his theory. Thus, Parker has not shown that counsel was ineffective, and he is not entitled to an evidentiary hearing on this claim.
Parker also alleges that trial counsel failed to effectively impeach the witness Tammy Duncan, as there were inconsistencies between her testimony at trial and her prior sworn statement regarding the presence of Deputy McNesby at the time the fatal bullet was fired. However, the record refutes Parker's claim. Defense counsel thoroughly cross-examined Duncan, eliciting from Duncan the contradiction between her prior sworn statement that Deputy McNesby was in close proximity to the victim when the shot was fired and her testimony at trial that Deputy McNesby was sixty to seventy feet away from the victim at the time the shot was fired. Furthermore, defense counsel elicited from Duncan the fact that she could not identify who had shot the victim. Therefore, based upon the record, Parker's contention that *379 defense counsel was ineffective for failing to properly cross-examine Duncan has no merit.
Because Parker's claims of ineffective assistance of trial counsel based on counsel's failure to present expert testimony on photography and toolmarking and failure to present significant mitigation evidence at the penalty phase are not refuted by the record, we must accept the factual allegations made by Parker and remand for an evidentiary hearing on these matters. See Peede v. State, 748 So.2d 253 (Fla.1999); Valle v. State, 705 So.2d 1331 (Fla.1997).

Issue 2: Public Records
Parker claims that the trial court abused its discretion in denying his requests for records from the Broward County Sheriff's Office in the form of personnel files and internal affairs files of the law enforcement officers involved in the investigation. As we stated in State v. Coney, 845 So.2d 120 (Fla.2003):
A circuit court's ruling on a public records request filed pursuant to a rule 3.850 motion will be sustained on review absent an abuse of discretion....
Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court.
Id. at 137 (quoting White v. State, 817 So.2d 799, 806 (Fla.), cert. denied, 537 U.S. 1091, 123 S.Ct. 699, 154 L.Ed.2d 638 (2002)). In the instant case, Parker made a blanket request for the files of forty-five officers. However, Parker was only able to specifically name two officers, Detective Scheff and Detective Wiley, who were involved in his case. He stated that he needed the files "to see if there is any impeachment evidence or anything of that nature in there." In response to the requests, the State offered Parker the opportunity to question the attorneys from each of the agencies involved regarding the records demanded.
The trial court granted Parker's request for Detective Scheff's and Detective Wiley's files but denied Parker's requests for all other public records, finding that the prejudicial effect to the administration of justice outweighed any possible probative value to the defendant. The trial court's decision to deny Parker's motion was reasonable because Parker could only name two individuals at the Broward County Sheriff's Office whose files were relevant to his case, and because the State offered Parker the opportunity to question the attorneys from each of the agencies involved. We conclude that the trial court did not abuse its discretion. Therefore, Parker is not entitled to relief on this claim.
In addition, Parker claims that the trial court also abused its discretion in refusing to unseal records submitted by the State Attorney's Office based on claims that the records were exempt from public records disclosure. The trial court reviewed these records and determined that they did not contain any Brady[6] material. Thus, the record reveals that the court did not abuse its discretion in denying Parker access to the sealed records submitted by the State Attorney's Office.

Issue 3: Jury Misconduct/Juror Interviews
Parker argues that defense counsel failed to effectively raise and preserve for review a claim that the jury engaged in misconduct by reaching its penalty phase recommendation to impose the death penalty in an improper manner based upon *380 extrinsic considerations. The record, however, refutes Parker's argument. First, counsel brought to the court's attention an article from The Miami Herald which stated that a reporter for the Herald had talked with a member of the jury who indicated that the jury's initial seven-to-five vote was in favor of a life sentence. Second, counsel attempted to raise and preserve this issue for review. Third, counsel called a witness, Carlton Moore, to address this issue further. Moore testified that he had talked with a member of the jury and that this person stated that the jury had initially voted seven-to-five for a life sentence but the vote changed because one of the members of the jury was "in a hurry." Because counsel did raise this issue at trial, Parker's claim of ineffective assistance has no merit.
Parker also challenges the denial of his claim related to juror interviews and the trial court's failure to declare rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar unconstitutional. This claim should have been raised on direct appeal. As a result, Parker is procedurally barred from raising this issue here. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla.1994) (holding that "issues that could have been raised on direct appeal, but were not, are not cognizable through collateral attack"); accord Arbelaez v. State, 775 So.2d 909 (Fla.2000).
Additionally, we have cautioned against permitting jury interviews to support postconviction relief for allegations which focus upon jury deliberations. Mitchell v. State, 527 So.2d 179, 181 (Fla.1988) ("It is a well settled rule that a verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations."). Thus, counsel could not inquire into the jury's deliberations as Parker asserts.

Issue 4: Lethal Injection
Parker claims that execution by lethal injection or electrocution is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. However, this Court has repeatedly held that neither form of execution is cruel and unusual punishment. See, e.g., Provenzano v. State, 761 So.2d 1097, 1099 (Fla.2000) (concluding that "execution by lethal injection does not amount to cruel and/or unusual punishment"); Provenzano v. Moore, 744 So.2d 413, 415 (Fla.1999) (stating that "Florida's electric chair is not cruel or unusual punishment"), cert. denied, 528 U.S. 1182, 120 S.Ct. 1222, 145 L.Ed.2d 1122 (2000). Therefore, relief on this claim is denied.

Issue 5: Cumulative Error
Parker claims that he did not receive the fundamentally fair trial to which he was entitled under the Eighth and Fourteenth Amendments because the sheer number and types of errors involved, when considered as a whole, virtually dictated the sentence that he would receive. However, where the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails. See Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999). As discussed in the analysis of the individual issues above, the alleged errors are either insufficiently pled, meritless or procedurally barred or do not meet the Strickland standard for ineffective assistance of counsel. Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.

Issue 6: Incompetence for Execution
Parker argues that he may be incompetent to be executed. However, he concedes that the claim is premature. Under *381 Florida Rules of Criminal Procedure 3.811 and 3.812, the issue of competency for execution cannot be raised until the Governor has issued a death warrant. See, e.g., Cole v. State, 841 So.2d 409, 430 (Fla.2003); Brown v. Moore, 800 So.2d 223, 224 (Fla.2001). While Parker is under a death sentence, no death warrant has been signed and his execution is not imminent. Parker's concession that this issue is not yet ripe is accurate, and we deny relief on this claim.

HABEAS CORPUS PETITION

Issue 1: Ineffective Assistance of Appellate Counsel
In his petition for habeas corpus relief, Parker raises three claims. Parker first argues that his appellate counsel was ineffective for failing to raise several issues on appeal. "The proper method by which to raise a claim of ineffective assistance of appellate counsel is by petition for writ of habeas corpus directed to the appellate court which considered the direct appeal." Ragan v. Dugger, 544 So.2d 1052, 1054 (Fla. 1st DCA 1989); see also Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) ("Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel. However, claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postconviction motion."). Thus, Parker properly raises these claims in this habeas petition.
Parker alleges appellate counsel was ineffective for failing to raise on direct appeal the trial court's denial of his motion to disqualify the prosecutor based upon the prosecutor being a witness to the medical examiner's alleged realization that he had made a mistake regarding the appearance of the bullet removed from the victim. Parker claims that the prosecutor violated the "witness-advocate" rule when Dr. Bell testified that the prosecutor prompted him to realize that he had looked at the bullet at the autopsy and mistakenly reported the bullet was silver-colored with no deformations instead of copper-colored with a large cut. Dr. Bell testified that he did not realize his mistake until the prosecutor called him on the telephone and asked him to look at a slide photograph of the bullet. Although Parker concedes that the prosecutor never actually testified before the court, Parker claims that the prosecutor testified indirectly by implying to the jury that he had special knowledge or insight during his examination of Dr. Bell on the witness stand.
This argument has no merit. The prosecutor never testified in the case. In addition, trial counsel did not object to Dr. Bell's testimony on this basis. Therefore, appellate counsel cannot be deemed ineffective for failing to raise a nonmeritorious issue and an issue not preserved for appeal. See Freeman v. State, 761 So.2d 1055, 1071 (Fla.2000) ("Appellate counsel cannot be ineffective for failing to raise these issues because the claims are without merit.").
Parker also claims that the penalty phase testimony of Deputy Robert Cerat, FBI Agent Jerry Richards, and Dr. Patrick Besant-Matthews resulted in relitigating the guilt phase issues, that the testimony was irrelevant to the issue of the great risk to others aggravator, and that the testimony constituted unconstitutional nonstatutory aggravating factors that violated the Eighth Amendment and prevented the constitutionally required narrowing of the sentencer's discretion. Therefore, Parker claims, appellate counsel was ineffective for not raising this issue on direct appeal. The State, on the other hand, claims that, because the testimony was *382 admissible and relevant evidence confirming the identity of the person who created a great risk to others, there was no violation of Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), or Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), both of which address the impact on the death sentence when the jury is instructed on a vague, unconstitutional aggravating factor.
The record demonstrates that the testimony of these penalty phase witnesses was elicited in an attempt to support the State's assertion that all of the bullets came from Parker's gun in order to prove that Parker knowingly created a great risk of death to many persons. Though defense counsel objected to their testimony and moved for a mistrial, the trial court did not abuse its discretion either in overruling counsel's objection to their testimony or in denying counsel's motion for a mistrial based upon their testimony. See Dennis v. State, 817 So.2d 741, 758 (Fla.) ("We review a trial court's ruling on the relevance of evidence under an abuse of discretion standard."), cert. denied, 537 U.S. 1051, 123 S.Ct. 604, 154 L.Ed.2d 527 (2002); Rivera v. State, 859 So.2d 495, 512 (Fla.2003) (explaining that "the standard of review of a motion for mistrial is the abuse of discretion standard"). Appellate counsel cannot be deemed ineffective for failing to raise this issue on direct appeal. See Freeman, 761 So.2d at 1070.
Parker also asserts appellate counsel was ineffective for failing to argue on appeal that Parker was denied his right to due process of law, to confront witnesses against him, and to the effective assistance of counsel when he was involuntarily absent from the suppression hearing at the beginning of the trial. He claims that his absence during the suppression hearing violated his Eighth Amendment right and rendered his trial proceedings fundamentally unfair. In Muehleman v. State, 503 So.2d 310, 315 (Fla.1987), this Court held that a suppression hearing is not a crucial stage of a trial. See also United States v. Raddatz, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself.... We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself."). Therefore, we find no Eighth Amendment violation in this regard.
Furthermore, as the State points out, the initial suppression hearing pertained only to the codefendant, Ladson Marvin Preston, Jr. Parker was given the opportunity to review the transcript and determine whether he wished to have the State recall its first witness, Deputy Sheriff Chris Michael Presley. Parker's counsel, in Parker's presence, had thoroughly cross-examined that witness. Parker was given an opportunity to recall the State's witness but elected not to do so. Thus, the claim was not properly preserved, and appellate counsel cannot be deemed ineffective for failing to raise the issue on direct appeal. See Freeman, 761 So.2d at 1070.
Finally, Parker asserts that appellate counsel was ineffective for failing to challenge the lack of a specific charge against him because the State was permitted to charge and prosecute him for both premeditated murder and felony first-degree murder. Parker claims that the lack of notice of a specific charge violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. It is well established that an indictment which charges premeditated murder permits the State to prosecute under both the premeditated and felony murder *383 theories. See Kearse v. State, 662 So.2d 677, 682 (Fla.1995) ("The State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder."). This claim is without merit, and appellate counsel cannot be deemed ineffective for failing to have raised it on direct appeal. See Freeman, 761 So.2d at 1070.

Issue 2: Ring Claim
Parker next challenges the constitutionality of his death sentence because the recommendation for death and the aggravating circumstances were not found by a unanimous jury. This Court has repeatedly held that it is not unconstitutional for a jury to recommend death on a simple majority vote. See Whitfield v. State, 706 So.2d 1 (Fla.1997); Thompson v. State, 648 So.2d 692 (Fla.1994); Brown v. State, 565 So.2d 304 (Fla.1990); Alvord v. State, 322 So.2d 533 (Fla.1975). Moreover, this Court has rejected claims that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires aggravating circumstances to be individually found by a unanimous jury verdict. See Hodges v. State, 885 So.2d 338, 359 n. 9 (Fla.2004); Porter v. Crosby, 840 So.2d 981, 986 (Fla. 2003). Moreover, one of the aggravating factors found to exist in this case is a prior violent felony, a factor that was determined by a unanimous jury and which satisfies the constitutional requirements of Ring. See Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003) (noting that prior violent conviction aggravator was supported by contemporaneous felonies charged in the indictment and of which the jury found the defendant unanimously guilty). Therefore, relief on Parker's Ring claim is denied.

Issue 3: Indictment/Aggravating Circumstances
Parker claims that the failure to allege the aggravating circumstances in the indictment renders his sentence unconstitutional under Ring and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This Court has consistently rejected this claim. See Porter v. Crosby, 840 So.2d 981, 986 (Fla.2003) (rejecting claim that Apprendi requires that the aggravating circumstances be charged in the indictment, submitted to the jury, and individually found by a unanimous jury verdict); Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003); Doorbal v. State, 837 So.2d 940, 963 (Fla.2003). Likewise, we deny relief here.

CONCLUSION
We reverse the order of the trial court solely with respect to the claims of ineffective assistance of trial counsel based on counsel's handling of the bullet evidence and counsel's presentation of mitigating evidence at the penalty phase and remand for an evidentiary hearing on these issues. We otherwise affirm the trial court's order denying postconviction relief with respect to the other issues raised. We also deny habeas corpus relief.
It is so ordered.
WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in part and dissents in part with an opinion, in which PARIENTE, C.J., and ANSTEAD, J., concur.
LEWIS, J., concurring in part and dissenting in part.
I concur with regard to reversing the summary denial of relief and ordering an evidentiary hearing. However, I do not *384 agree and dissent with regard to the limitation imposed on the guilt phase evidentiary hearing as to any available evidence concerning the accounting of projectiles discharged from weapons during the underlying event and the interaction of such evidence with the changed testimony of the medical examiner, which was a very serious alteration of critical evidence. In my view, all of these questions are totally interrelated, and any fair analysis should be open for the presentation of all available evidence directed to the manner in which counsel addressed this very critical aspect of the case and the evidence which may hold the key to guilt or innocence. Complete consideration of the ineffective assistance of counsel cannot be accomplished with the limitation imposed that prohibits exploration of the alleged "available evidence" with regard to the manipulation of evidence.
PARIENTE, C.J., and ANSTEAD, J., concur.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] The issues raised are: (1) whether the trial court erred by summarily denying Parker's claims of ineffective assistance of guilt and penalty phase counsel; (2) whether the trial court improperly denied Parker access to public records; (3) whether the trial court's denial of Parker's claims of ineffectiveness of counsel regarding juror misconduct and the rule prohibiting juror interviews was proper; (4) whether Parker's claim of ineffectiveness of counsel relating to voir dire examination of jurors was properly denied; (5) whether counsel was ineffective for failing to preserve for appeal a claim of systematic discrimination in the selection of the jury; (6) whether the trial court properly denied Parker's claim of ineffective assistance of counsel regarding the penalty phase instructions; (7) whether counsel was ineffective in failing to prove that Parker's claim of a Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), violation was improperly denied; (8) whether Parker's death penalty sentence is disproportionate to the crime for which he was convicted; (9) whether Parker's sentence of death is being exacted pursuant to a pattern and practice to discriminate on the basis of race in the administration of the death penalty; (10) whether counsel was ineffective in providing the jury with adequate guidance concerning the aggravating circumstances instructions; (11) whether Florida's capital sentencing statute is constitutional; (12) whether execution by electrocution or lethal injection is constitutional; (13) whether the combination of all errors deprived Parker of a fair trial guaranteed under the Sixth, Eighth, and Fourteenth Amendments; and (14) whether Parker is insane and cannot be executed.
[3] We do not address issues (4), (5), (6), (7), (8), (9), (10), and (11) in this opinion. Issues (5), (7), (9), and (11) are not addressed because they are bare-bones, conclusory allegations. See Gordon v. State, 863 So.2d 1215, 1218 (Fla.2003) ("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing."). Issues (4), (6), (8), and (10) were addressed on direct appeal and are not cognizable in a proceeding under rule 3.850. See Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla.1994) (holding 3.850 proceedings are not to be used as a second appeal for issues which were raised on direct appeal and holding it is not appropriate to use a different argument to relitigate the same issue).
[4] Both of these allegations represent what Parker calls the "copper bullet theory." This theory is in essence Parker's defense, namely that Deputy McNesby shot Nicholson, believing Nicholson to be involved in other local robberies, and that McNesby and the Broward Sheriff's Office conspired with both the medical examiner and the prosecutor to frame Parker for the murder. Parker chose this name for his theory because the bullets in Parker's gun were copper, while the bullets issued to the officers in the Broward's Sheriff's Office were silver.
[5] On direct examination by defense counsel, Parker's mother testified that: (1) Parker's parents separated when he was only three months old; (2) Parker's mother was first committed to a mental institution when Parker was six years old; (3) Parker was raised by the State of Florida Department of Health and Rehabilitative Services and babysitters while Parker's mother was committed; (4) Parker lived in foster homes and was separated from his sister; (5) Parker was abused by a babysitter; and (6) Parker's mother was repeatedly committed, causing Parker to be sent back and forth from his mother's care to foster homes. Howard Finkelstein, the assistant public defender in Broward County, testified that Parker's childhood was dysfunctional and that Parker was abused. Ladson Marvin Preston, Jr., the codefendant in this case, testified that Parker was intoxicated on the night of the Pizza Hut robbery. Dr. Glenn Ross Caddy, a psychologist who interviewed Parker, testified that: (1) Parker had a dysfunctional childhood and was abused; (2) Parker is of below normal intelligence; (3) Parker had lived on the streets after age twelve; (4) Parker was shuffled back and forth from different foster homes; (5) Parker abused alcohol and marijuana; (6) Parker reported that he was intoxicated when he committed the Pizza Hut robbery; (7) Parker had a poor self image which caused him to be unable to secure a legitimate job and forced him to engage in illegal acts; and (8) Parker has sociopathic tendencies. Carlton Moore, a part-time investigator for the Public Defender's Office of Broward County, testified that: (1) he investigated Parker's childhood and confirmed that it was dysfunctional, and (2) that Parker was abused.
[6] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).