[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 21, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14418
Non-Argument Calendar

_____

D. C. Docket No. 07-81125-CV-DTKH

MATHEW A. FORREST,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
Walter A. McNeil, Secretary,
ATTORNEY GENERAL OF THE STATE OF FLORIDA
Bill McCollum,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 21, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Petitioner-Appellant Mathew A. Forrest, proceeding pro se, appeals the district court's denial of his petition for writ of habeas corpus. Forrest argues that his conviction and sentence for two counts of aggravated assault with a firearm should be vacated due to ineffective assistance of his trial counsel. We disagree, and therefore affirm.

## I. Facts and Procedural History

Forrest was charged in Florida state court with two counts of aggravated assault with a firearm.[1] At trial, the witnesses' testimonies established the following:

Joshua Adams ("Joshua") and Forrest used to be close friends, but in 2002 some "bad blood came between" them due to a dispute over money and/or personal property. They subsequently had at least one fist fight. On May 19, 2003 at approximately 4:00 PM, Joshua and his brothers were outside of their mother's home when they saw Forrest drive slowly past the house. Joshua observed a "sawed off little shotgun" on top of a towel on Forrest's dashboard. About three hours later, Joshua and one of his brothers, Jonathan (collectively, the "Adams brothers"), drove to a friend's house, which was located across the street from a

---

[1] Forrest was also charged with one count of being a felon in possession of a firearm, to which he subsequently pleaded guilty, but that count is not at issue in this appeal.

home occupied by Tavares Washington, the son of Forrest's girlfriend. Joshua did not see his friend's car, so he turned around and as he passed Washington's house, he saw Washington and Forrest standing outside. According to Joshua, Forrest "said something slick" and Joshua "said something slick back to him." Then, "[s]omebody popped the trunk to . . . a Dodge Neon" and Forrest pulled out what initially appeared to be a stick. Joshua drove slowly down the street and Forrest and Washington followed on foot as the men continued to exchange words.

Eventually, Forrest raised the item that he was holding. Joshua heard a gunshot, realized that the item in Forrest's hand was a shotgun, and Jonathan said to Joshua, "he shot at you." Joshua sped away and called his older brother, Norman, seeking assistance. Norman initially told Joshua to go to the police station, but then directed Joshua to return to the scene of the altercation because police had arrived. Joshua returned and recited the foregoing events to the police. The police did not inspect Joshua's car, but told him to take pictures if he later noticed any damage. The next day, Joshua inspected his car and noticed that the paint was chipped in a number of spots, consistent with damage that could be caused by shotgun pellets. Joshua took pictures of this damage.

Boynton Beach Police Officer Brian Adams[2] testified that he was the first

---

[2] The record does not imply any familial relation between Officer Adams and the Adams brothers.

officer on the scene after the alleged gunfire. He observed Forrest standing outside of Washington's residence, leaning against a car. Detective Richard O'Connor obtained consent from Forrest to search the car. This search yielded one live shotgun shell. During the course of investigating and interviewing witnesses, Officer Adams located "one spent 12 gauge shotgun" shell in the front yard. Once the owner of the residence arrived,[3] consent was obtained to search the house. Officer Adams entered the residence, saw two children playing video games, and asked them if they had seen a gun. One child pointed to a hole in the ceiling. Officer Adams reached into the hole and recovered a bag, which contained a sawed-off shotgun and live shotgun shells.

The prosecution's ballistics expert testified that the shotgun casing recovered from the lawn of Washington's house was fired by the sawed-off shotgun found in the ceiling of the residence. He explained that this shell "was a typical shell which would have [released] multiple projectiles [when fired]." He also testified that the live shotgun shell found in the car fit the sawed-off shotgun found in the ceiling.

At the conclusion of the prosecution's case, defense counsel voiced his desire to call Washington as a witness, but indicated that Washington was not present. Defense counsel requested a continuance and the trial judge asked, "did

---

[3] Although Washington lived at this residence, it does not appear that he was the owner of the premises.

you tell him that he needed to be here?" Defense counsel responded, "[I] reminded him of the conversation we had on Sunday and that I need him . . . I can't tell the court if I told him to come to court. I might have said something like I'm going to need you to testify possibly, I might have said something along those lines, but I can't tell the court that for sure." The trial judge initially denied the motion for a continuance and admonished counsel for not "mak[ing] arrangements or ask[ing] the court for a motion to issue an emergency subpoena." Defense counsel insisted that a subpoena was unnecessary because Washington is "a willing witness. He will come here voluntarily." Defense counsel contended that Washington lived at the house in which the gun was found and that he would testify that he was with Forrest on May 19, 2003, that he saw Joshua, that he and Forrest did not walk down the street after Joshua's car, and that he did not see Forrest fire any shots at Joshua. The trial judge ultimately explained that although he was "not happy with the manner in which the witness was handled," he would continue the case until the next afternoon "in the interest of justice."

The next day, the trial judge opened proceedings and said to defense counsel, "[y]ou have a witness you're going to [c]all, right?" Defense counsel, without explanation, responded, "Your Honor, the Defense would rest at this time." The jury subsequently found Forrest guilty of two counts of aggravated

assault with a firearm.  Forrest was sentenced to twenty years imprisonment.

Forrest appealed to the state appellate court, which affirmed the convictions. Forrest v. State, 904 So. 2d 629 (Fla. Ct. App. 2005).  Forrest thereafter filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging eight instances of ineffectiveness by his trial counsel.  The trial court denied this motion and the ruling was affirmed by the state appellate court. Forrest v. State, 967 So. 2d 212 (Fla. Ct. App. 2007).

Forrest thereafter filed a petition for writ of habeas corpus in United States District Court for the Southern District of Florida, again alleging ineffective assistance of counsel.  The magistrate judge issued a report and recommendation, which concluded that the petition for writ of habeas corpus should be denied.  The district court adopted this report and recommendation and closed the case.  We issued a certificate of appealability ("COA"), limited to the following two issues only: (1) "Whether the district court erred in determining that defense counsel was not ineffective for failing to call an alibi witness to testify on Forrest's behalf," and (2) "Whether the district court erred in determining that Forrest could not demonstrate that the cumulative effect of counsel's deficiencies, including his claims that his attorney failed to investigate and prepare to the extent that he could ensure a fair trial, amounted to ineffective assistance of counsel."

6

## II. Discussion

### A. Standard of review

When reviewing the district court's denial of a habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error. Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000).

The instant case is governed by 28 U.S.C. § 2254, which provides,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court

7

conducts an "unreasonable application" of clearly established federal law if it: (1) "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case," or (2) "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

In order to prove ineffective assistance of counsel, a petitioner must overcome the strong presumption that his counsel's performance was "within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 688-89 (1984). If the petitioner overcomes this presumption by showing that counsel's performance "fell below an objective standard of reasonableness," id. at 668, he must then prove that, but for his counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Id. at 669.

B. Failure to Call the Alibi Witness

Forrest argues that defense counsel was ineffective due to his failure to call Washington as a witness. He contends that Washington would have testified that Forrest was with him at the time that Forrest allegedly shot at the Adams brothers and that Washington observed no such shooting.[4]

---

[4] Forrest also argues that Washington could have provided possible motives for the Adams brothers to proffer false testimony. The COA, however, was limited to the question of

8

We conclude that the state court's decision was not "contrary to" clearly established federal law because the state court applied the appropriate standard, as identified by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and there is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

We also conclude that the state court's ruling was not an "unreasonable application" of clearly established federal law. First, it is not clear from the record why defense counsel did not call Washington as a witness after receiving the one day continuance. If counsel made the decision not to call Washington for strategic reasons – if, for example, he spoke with Washington and decided that his testimony would not be helpful or that he would not make a credible witness – then this court would not provide relief for such strategic decisions by counsel.[5] See Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). Second, even assuming arguendo that Washington would have been a helpful witness and that counsel's

---

whether counsel was ineffective for failing to call a specific alibi witness. Other arguments as to why that individual's testimony could have been helpful, therefore, will not be addressed on appeal because they are beyond the scope of the COA. See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998) (appellate review is limited to the issues specified in the COA).

[5] We have no evidence as to what would have been the actual substance of Washington's testimony. The trial transcript and Rule 3.850 motion merely contain self-serving statements by Forrest as to what Washington would say once on the witness stand. Forrest did not submit any affidavits from Washington that explain what he observed on May 19, 2003, if he spoke with Forrest's counsel, or if defense counsel told Washington that he planned to call him as a witness.

9

performance "fell below an objective standard of reasonableness" by not calling Washington, Strickland, 466 U.S. at 668, Forrest still cannot show that Washington's testimony would have likely changed the result of the trial. The following evidence had already been established against Forrest: (1) Joshua and Jonathan both testified that they saw Forrest in possession of a sawed-off shotgun earlier in the day and that Forrest shot at them; (2) Forrest was found by police outside of Washington's residence, a shotgun casing was found on the lawn of the residence, and a shotgun was found inside the residence; (3) a ballistics expert testified that the shotgun found inside the residence was used to fire the shotgun casing found on the lawn; (4) a live shotgun shell that fit the sawed-off shotgun was found inside Forrest's trunk; and (5) the damage on Joshua's car was consistent with that which could be caused by shotgun pellets. In light of this physical evidence and testimony, Forrest has not shown that had Washington testified, there is a reasonable probability that the result would have been different. See Wellington v. Moore, 314 F.3d 1256, 1262-63 (11th Cir. 2002) (declining to find a reasonable probability that alibi testimony would have changed the outcome of a trial because, inter alia, one witness testified that the defendant was in the vicinity shortly before the crime and the victim identified the defendant as the man who robbed her).

Thus, the state court's ruling was not an unreasonable application of federal law.

## C.  Cumulative Deficiencies

Forrest argues that defense counsel committed multiple errors, largely related to investigation and preparation for trial.[6]  Forrest argues that, when viewed in aggregate, these errors amount to ineffective assistance.

The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim.  However, the Supreme Court has held, in the context of an ineffective assistance claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

---

[6] Specifically, Forrest contends that counsel committed the following errors: (1) counsel failed to notice Joshua's statement about the gun on Forrest's dashboard until he read Joshua's deposition immediately prior to trial; (2) counsel failed to recognizing the importance of deposing Washington, even though Joshua indicated that Washington was standing next to Forrest at the time of the shooting; (3) counsel knew that pictures of Joshua's car existed, but failed to investigate when and where the photos were taken and failed to object to their admission; (4) counsel failed to properly file a motion to suppress the ballistics report; (5) counsel failed to examine files presented by the prosecution, as evidenced by counsel's failure to notice that the state had a ballistics expert listed as a witness; (6) counsel failed to request a continuance in order to file a written motion, as required by rule, asking the judge to recuse himself due to alleged bias against defense counsel; (7) counsel failed to call a rebuttal ballistics expert witness; and (8) counsel stated that he intended to re-call the Adams brothers, but failed to secure their presence, thus causing the court to deny counsel's request.

Forrest raised his cumulative error argument before the state court. The state court concluded that none of Forrest's alleged individual errors amounts to ineffective assistance of counsel. Thus, the state denied Forrest's claim of cumulative error by relying on the Florida Supreme Court's holding in Parker v. State, 904 So.2d 370 (Fla. 2005), which stated that "where the individual claims of error alleged are . . . without merit, the claim of cumulative error also necessarily fails." Id. at 380.

In the present appeal, Forrest lists alleged failures by counsel, but does not establish prejudice or the collective effect of these errors on the trial. In light of Cronic and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's holding is not contrary to or an unreasonable application of clearly established federal law. Accordingly, the district court did not err in determining that Forrest's cumulative error argument lacked merit.

### III. Conclusion

For the foregoing reasons, we affirm the district court's denial of Forrest's § 2254 petition.

**AFFIRMED.**