# Supreme Court of Florida

---

No. SC2024-1170

---

**LORAN COLE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

August 23, 2024

PER CURIAM.

Loran Cole is a prisoner under a sentence of death for whom a warrant has been signed and an execution set for August 29, 2024. He appeals the circuit court's orders summarily denying his fourth successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851 and denying his public records requests made under rule 3.852.[1] For the reasons that follow, we

---

1. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

affirm. We also deny Cole's motion to stay and his request for oral argument filed in this Court.

**I**

On February 18, 1994, Florida State University freshman John Edwards met his sister, then a senior at Eckerd College in St. Petersburg, for a weekend of camping in the Ocala National Forest.[2] *Cole v. State* (*Cole II*), 841 So. 2d 409, 413 (Fla. 2003). That evening, the Edwards siblings were discovered by Cole and his companion, William Paul. *Id.* Eventually, the four sat around the campfire, and at about 10:45 p.m., they decided to walk to a pond. *Cole v. State* (*Cole I*), 701 So. 2d 845, 848 (Fla. 1997). The four walked for a while but never found the pond. *Id.* Instead, John died that night from a slashed throat and three blows to the head, which fractured his skull. *Id.* at 849. The injury to the throat caused a loss of blood externally and internally into John's lungs. *Id.* After returning with John's sister to the campsite, Cole forced her to remove her clothes by threatening that unless she

---

2. We discussed the facts of this case in depth in *Cole v. State* (*Cole I*), 701 So. 2d 845, 848-49 (Fla. 1997), *cert. denied*, 523 U.S. 1051 (1998).

cooperated, she and John would be killed. *Id.* Cole then raped her. *Id.* Ultimately, Cole gagged John's sister, tied her to two trees, and left with Paul in her car. *Id.*

Cole was indicted on charges of first-degree murder, two counts of kidnapping with a weapon, two counts of robbery with a weapon, and two counts of sexual battery. *Id.* After a jury trial, Cole was found guilty of all counts in the indictment. *Id.* A penalty phase hearing was held, after which the jury unanimously recommended death. *Id.* Finding four aggravators,[3] no statutory mitigators, and two nonstatutory mitigators,[4] the trial court followed the jury's recommendation and sentenced Cole to death. *Id.* On direct appeal, this Court affirmed Cole's convictions and sentence of death, which became final when the United States

---

3. Specifically, the trial court found the following aggravators: (1) Cole had previously been convicted of another felony; (2) the murder was committed during the course of a kidnapping; (3) the murder was committed for pecuniary gain; and (4) the murder was especially heinous, atrocious, or cruel. *Cole I*, 701 So. 2d at 849 n.1.

4. The trial court found and weighed the following nonstatutory mitigators: (1) Cole suffered from organic brain damage and mental illness (slight to moderate weight); (2) Cole suffered an abused and deprived childhood (slight weight). *Cole I*, 701 So. 2d at 849 n.2.

Supreme Court denied Cole's certiorari petition on March 30, 1998. *Cole v. Florida*, 523 U.S. 1051 (1998).

Cole has since unsuccessfully challenged his convictions and death sentence in both state and federal court. In 1998, Cole filed his first motion for postconviction relief, which the circuit court denied. *Cole II*, 841 So. 2d at 413. He then sought review in this Court[5] and soon thereafter separately sought habeas relief from this

_____

5. In his rule 3.850 appeal, Cole argued that: (1) the trial court erred in denying Cole an evidentiary hearing on trial counsel's failure to (a) present evidence of Cole's extensive drug and alcohol abuse, (b) present evidence of childhood abuse, (c) object to prosecutorial misconduct during the penalty phase closing, (d) request an HAC limiting jury instruction, (e) introduce Paul's life sentence, (f) request co-counsel to assist with the penalty phase, and (g) object to hearsay testimony of Dan Jackson and Deputy Tammy Jicha; (2) trial counsel was ineffective for failing to request and argue two statutory mental mitigators; (3) trial counsel was ineffective for failing to have a competent neuropsychological evaluation performed on Cole; (4) Cole did not receive effective mental health assistance as required by *Ake v. Oklahoma*, 470 U.S. 68 (1985); (5) the trial court erred by excluding Dr. Dee's testimony during the evidentiary hearing; (6) after an evidentiary hearing, the trial court erred in not finding trial counsel ineffective during the guilt phase regarding trial counsel's (a) failure to conduct individual voir dire, (b) failure to utilize a peremptory challenge to remove juror Cutts, (c) failure to present Paul's testimony, (d) failure to contemporaneously object to the prosecutor's improper opening statement, (e) decision to only call John Thompson during Cole's case-in-chief, and (f) cumulative error as to this claim; (7) the trial court erred in refusing to allow a DNA test; (8) the trial court

- 4 -

Court.[6]  *Id.* at 429.  We affirmed the circuit court's denial of relief and denied his petition for writ of habeas corpus.  *Id.* at 431.

Cole next sought DNA testing pursuant to Florida Rule of Criminal Procedure 3.853.  *Cole v. State* (*Cole III*), 895 So. 2d 398, 400 (Fla. 2004).  The circuit court denied the motion, and we affirmed.  *Id.* at 403.  Cole then sought relief in federal court, filing a habeas petition in 2005.  *Cole v. Crosby*, No. 505CV222OC10GRJ, 2006 WL 1169536, at *2 (M.D. Fla. May 3, 2006).  The federal

---

considered nonstatutory aggravating circumstances; (9) the State withheld exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (10) Cole should be allowed to question jurors to determine if there was juror misconduct; (11) the trial court erred in failing to grant an evidentiary hearing on trial counsel's failure to litigate the unconstitutional nature of the aggravating circumstances; and (12) cumulative error exists.  *Cole II*, 841 So. 2d at 414 n.3.

6.  In his habeas petition, Cole argued that: (1) his appellate counsel was ineffective for appellate counsel's failure to argue that (a) Florida's death sentencing statute was unconstitutionally applied to him in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), (b) the trial court erred in denying Cole's motion for a statement of particulars regarding aggravating circumstances, and (c) a jury death recommendation must be unanimous; (2) the prosecutor's penalty phase closing argument constituted fundamental error; (3) Cole may be incompetent to be executed; (4) electrocution (a) remains the mandated mode of execution as the Death Penalty Reform Act of 2000 is unconstitutional, and (b) is cruel or unusual or both; and (5) lethal injection is cruel or unusual or both.  *Cole II*, 841 So. 2d at 414 n.4.

district court denied relief and denied Cole's subsequent request for a certificate of appealability. *Id.* at *68; *Cole v. Crosby*, No. 5:05-CV-222-OC-10, 2006 WL 1540302, at *1 (M.D. Fla. May 30, 2006). Cole additionally sought a renewed application for certificate of appealability in the United States Court of Appeals for the Eleventh Circuit, which was denied in a one-page order in 2007. The United States Supreme Court denied certiorari review. *Cole v. McDonough*, 552 U.S. 1115 (2008).[7]

Thereafter, Cole filed his first and second successive motions for postconviction relief on similar grounds,[8] which the circuit court denied, and we affirmed. *Cole v. State* (*Cole IV*), 83 So. 3d 706 (Fla. 2012); *Cole v. State* (*Cole V*), 131 So. 3d 787 (Fla. 2013). We also affirmed the denial of Cole's third successive motion for

---

7. Cole filed an application for leave to file a second federal habeas petition in the Eleventh Circuit, which was denied on March 20, 2012.

8. Cole's first successive motion argued that previously repressed memories had resurfaced about abuse he witnessed and suffered at the Arthur G. Dozier School for Boys and this newly discovered evidence demonstrated that trial counsel was ineffective during the penalty phase of Cole's trial. Cole's second successive postconviction motion reframed his memory suppression issue as one of newly discovered evidence.

postconviction relief that presented a *Hurst*[9] claim. *Cole v. State*

(*Cole VI*), 234 So. 3d 644 (Fla. 2018). The United States Supreme

Court denied certiorari review. *Cole v. Florida*, 585 U.S. 1007

(2018).

On July 29, 2024, Governor DeSantis issued a death warrant

for the execution of Cole. The execution is scheduled for Thursday,

August 29, 2024, at 6:00 p.m. As a result, Cole filed a demand for

public records pertaining to lethal injection protocol directed to the

Florida Department of Law Enforcement, the Florida Department of

Corrections, and the Office of the Medical Examiner, District Eight.

After receiving objections from all three entities, and after holding a

hearing, the postconviction court entered an order denying Cole's

requests.

Next, and timely under this Court's scheduling order, Cole

filed his fourth successive motion for postconviction relief raising

---

9. Cole sought relief under the United States Supreme Court's decision in *Hurst v. Florida*, 577 U.S. 92 (2016), and this Court's decision on remand in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020); *see also Gonzalez v. State*, 375 So. 3d 886, 887 (Fla. 2023) (acknowledging that the Legislature amended the death penalty statute to remove the juror unanimity requirement).

three claims: (1) that he is entitled to relief based upon newly discovered evidence regarding his treatment while he attended the Arthur G. Dozier School for Boys in 1984 (Dozier school); (2) that his Eighth Amendment rights were violated because his experience while an inmate in the Department of Corrections has been cruel and unusual; and (3) Florida's lethal injection procedures, as applied to him, are unconstitutional and constitute cruel and unusual punishment.

The postconviction court held a *Huff*[10] hearing on August 6, 2024, after which it determined that each of Cole's claims could be resolved based on a review of the record and as a matter of law. The postconviction court then entered an order denying Cole's claims as either untimely or procedurally barred, and as to claims 2 and 3, substantively on the merits.

On appeal, Cole asserts that the postconviction court erred by summarily denying his fourth successive postconviction motion and denying his requests for public records. We find no error and affirm.

---

10. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

## II

## A

"Summary denial of a successive postconviction motion is appropriate '[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief.'" *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (alteration in original) (quoting Fla. R. Crim. P. 3.851(f)(5)(B)); *see also Parker v. State*, 904 So. 2d 370, 376 (Fla. 2005) ("As a general proposition, a defendant is entitled to an evidentiary hearing on any well-pled allegations in a motion for postconviction relief unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient."). Also relevant to this appeal, postconviction claims in capital cases must generally be filed within one year after the judgment and sentence become final. Fla. R. Crim. P. 3.851(d)(1). And rule 3.851 prohibits, with certain exceptions, both untimely and repetitive claims. *See* Fla. R. Crim. P. 3.851(e)(2) (providing that "[a] claim raised in a successive motion shall be dismissed . . . if the trial court finds the claim fails to meet the time limitation exceptions set forth in subdivision (d)(2)(A), (d)(2)(B), or (d)(2)(C)");

- 9 -

*Hendrix v. State*, 136 So. 3d 1122, 1125 (Fla. 2014) ("Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion."). The burden is on the defendant to establish a prima facie case, based upon a legally valid claim. *See Franqui v. State*, 59 So. 3d 82, 96 (Fla. 2011).

In reviewing a trial court's summary denial, "this Court must accept the defendant's allegations as true to the extent that they are not conclusively refuted by the record." *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008). However, mere conclusory allegations do not warrant an evidentiary hearing. *Anderson v. State*, 220 So. 3d 1133, 1142 (Fla. 2017); *see also LeCroy v. Dugger*, 727 So. 2d 236, 238 (Fla. 1998). We review the postconviction court's decision de novo. *See, e.g.*, *Marek v. State*, 8 So. 3d 1123, 1127 (Fla. 2009).

**1**

In his first argument on appeal, Cole argues that the trial court erred in denying his claim regarding his treatment while he attended the Dozier school. Appearing to recognize the impediment that rule 3.851's one-year time limit is to his claim, Cole argues that Florida has just recently acknowledged the mitigative atrocities

that occurred at the Dozier school by virtue of the Governor signing CS/HB 21, which became effective July 1, 2024.[11] *See* ch. 2024-254, Laws of Fla. (codified at § 16.63, Fla. Stat. (2024)). This recent acknowledgment, Cole submits, constitutes newly discovered evidence sufficient to overcome any procedural bars.

Because Cole is seeking to vacate his death sentence based on allegations of newly discovered evidence, Cole must establish "(1) that the newly discovered evidence was unknown by the trial court, by the party, or by counsel at the time of trial and it could not have been discovered through due diligence, and (2) that the evidence is of such a nature that it would probably . . . yield a less severe sentence on retrial." *Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023) (omission in original) (quoting *Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021)). We agree with the postconviction court that Cole cannot meet his burden.

---

11. CS/HB 21 created the "Dozier School for Boys and Okeechobee School Victim Compensation Program" to compensate living persons who were confined to those schools. The designated recipients of the bill were restricted to those confined at Dozier from 1940 to 1975. Cole's motion alleges he was at Dozier from June 1, 1984, until November 14, 1984. He clarifies he is not seeking monetary compensation, but instead seeking a life sentence.

Although CS/HB 21 was recently enacted, it does not amount to newly discovered evidence. Indeed, we have routinely held that resolutions, consensus opinions, articles, research, and the like do not satisfy the standard. *Barwick v. State*, 361 So. 3d 785, 793 (Fla. 2023) (holding that an American Psychological Association (APA) resolution did not constitute newly discovered evidence sufficient to overcome the one-year time limitation for filing postconviction claims); *Rogers v. State*, 327 So. 3d 784, 788 (Fla. 2021) (numerous instances of childhood sexual abuse defendant allegedly experienced at Training Institute of Central Ohio (TICO) was not newly discovered evidence where articles discussing the abuse of juveniles at TICO could have been discovered by trial counsel well before the penalty phase); *Foster v. State*, 258 So. 3d 1248, 1253-54 (Fla. 2018) (rejecting new "objective indicia of consensus," national trends, and "recent actions by state legislatures" not geared to the relevant age group but allegedly showing an evolving standard of decency with regard to age and punishment); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614-15 (6th Cir. 2012) (rejecting proffered evidence as newly discovered because it was publicly available beforehand).

The rationale underlying our decision in cases like *Barwick* applies with equal force to Cole's claim. Like the APA resolution in *Barwick,* CS/HB 21 expresses a public stance predicated on reports, data, and research that have been publicly available for years.[12] So, as the postconviction court noted, "[t]he harsh conditions at the Dozier School were exposed long ago." The State of Florida's decision to now compensate some of those individuals who attended the school does not revive Cole's previously denied postconviction claims.

Because CS/HB 21 does not constitute newly discovered evidence, the postconviction court also properly determined that Cole's claim is procedurally barred. Cole has twice before presented claims predicated on his treatment at the Dozier school to the circuit court and this Court. Specifically, Cole asserted in his first successive motion for postconviction relief that his trial counsel was

---

12. For example, Cole's initial brief highlights an article from 2009 and a lawsuit filed in 1983 to support his allegations regarding treatment at the Dozier school. Ben Montgomery & Waveney Ann Moore, *A Roster of the Lost,* Tampa Bay Times (Dec. 7, 2009), https://www.tampabay.com/archive/2009/12/06/a-roster-of-the-lost/; *Bobby M. v. Chiles*, 907 F. Supp. 368, 369 (N.D. Fla. 1995).

ineffective for failing to present as mitigating evidence during the penalty phase of Cole's 1995 trial that he had suffered abuse while at the Dozier school. To overcome timeliness issues present even then, Cole alleged that this information was discovered in early 2009 after he suffered a mental breakdown from watching a documentary about the Dozier school. The circuit court ultimately rejected his claim, concluding that Cole's pre-sentence investigation report referenced his time at the Dozier school and thus refuted his claims that the evidence was unknown to Cole or his counsel. We affirmed. *See Cole IV*, 83 So. 3d at 706.

Cole next attempted to raise a claim based on his treatment at the Dozier school in his second successive motion for postconviction relief. That time, he characterized the claim as one of newly discovered evidence. The postconviction court again rejected the claim. We affirmed because the claim was "nearly undistinguishable from his claim in *Cole IV*." *Cole V*, 131 So. 3d at 787.

At its core, Cole's latest argument related to his time at the Dozier school is only another variation of his claims that were raised and rejected in his first and second successive motions for

postconviction relief. As a result, he is prohibited from raising this issue once more. *See Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990) (citing *Quince v. State*, 477 So. 2d 535, 536 (Fla. 1985)) (holding it is inappropriate to use a new argument to relitigate a previously raised issue in a postconviction proceeding); *Barwick*, 361 So. 3d at 793 (observing that the petitioner was barred from using a different argument to relitigate the same issue). The postconviction court correctly concluded Cole's claim is procedurally barred.

**2**

In his second argument on appeal, Cole argues the postconviction court erred in denying his claim that his Eighth Amendment rights were violated because his experience while an inmate in the Department of Corrections constitutes cruel and unusual punishment. Specifically, Cole alleges among other things that over the last three decades he has "experienced neglect and mistreatment" because the Department of Corrections has "den[ied] him proper medical treatment, allow[ed] him to have access to illicit drugs, and then punish[ed] him with disciplinary reports" when Cole was found with the illicit drugs.

We agree with the postconviction court that Cole's claim is untimely. Cole's judgment and sentence became final in 1998. *Cole v. Florida*, 523 U.S. at 1051. Even so, Cole made no attempt to excuse his second claim's tardiness in the postconviction court. In fact, Cole failed to allege any specific date on which he claims he experienced "neglect and mistreatment" during his 30 years in the Department of Corrections other than to allege that he was "provided a 'laced' suspected cannabis joint" two years ago. So, it is clear this claim has been raised beyond the one-year time limitation of rule 3.851(d)(1).

On appeal, Cole attempts to excuse his failure to articulate any exception to the time bar in his postconviction motion, pointing to "time constraints under this expedited warrant." Cole says he "did not have time to provide the specific dates" to support his claim. Cole then cites in his initial brief a series of grievances he filed within the last two years, facts he did not allege in his motion nor present to the postconviction court below.[13] But we have

_____

13. While Cole indicated in this motion that he would also be admitting numerous grievances he has written over the years "[a]t the evidentiary hearing," no evidentiary hearing occurred, nor was

repeatedly held that "[i]n order to preserve an issue for appellate review, the *specific* legal argument or ground upon which it is based must be presented to the trial court." *Kokal v. State*, 901 So. 2d 766, 778-79 (Fla. 2005) (alteration in original) (quoting *Bertolotti v. Dugger*, 514 So. 2d 1095, 1096 (Fla. 1987)) (noting that appellant could not rely on facts not in evidence on appeal of an order denying his motion for DNA testing because he failed to present in the trial court the specific legal argument he raised on appeal); *see also Ventura v. State*, 2 So. 3d 194, 196-97 (Fla. 2009) (citing *Hunter v. State*, 29 So. 3d 256 (Fla. 2008)) ("[T]here is no indication in the record that [Appellant] ever provided the postconviction court with any of the documents upon which his claim supposedly rests . . . . Pursuant to binding Florida precedent, the postconviction court summarily denied each of [Appellant's] claims."). There is no exception to this rule for expedited litigation. So, we reject Cole's argument.[14]

---

one justified based on the allegations in Cole's fourth successive motion.

14. Cole briefly argues that he is making a claim based on newly discovered evidence under rule 3.851(d)(2)(A). This argument was also not presented in the postconviction court and is

Even were it timely though, Cole's claim would not provide a basis for relief. Cole appears to set forth a conditions-of-confinement claim, guided by *Estelle v. Gamble*, 429 U.S. 97 (1976), and its progeny. But Cole offers no authority to support the proposition that his claim, which would typically be presented in an action pursuant to 42 U.S.C. § 1983, serves as a valid basis to vacate a death sentence, nor does he attempt to explain how his claim would be cognizable under rule 3.851.[15]

To the extent Cole asserts a *Lackey* claim,[16] we likewise reject it based on our established precedent. *Orme v. State*, 361 So. 3d

---

insufficiently briefed in this Court. It does not provide a basis for relief.

15. Indeed, at the *Huff* hearing, Cole's counsel recognized that a civil lawsuit is a proper vehicle for challenging the conditions of one's confinement, stating:

> One could always argue that it's a civil matter and that a person like Mr. Cole could file a civil lawsuit, but that does Mr. Cole no favors when he's up for execution in now 23 days and this is an Eighth Amendment issue because of conditions of confinement, particularly what happened to Mr. Cole regarding the abuse and depravation and not taking care of his health, that is specific to Mr. Cole's Eighth Amendment violations.

16. In *Lackey v. Texas*, 514 U.S. 1045 (1995), Justice Stevens wrote in a memorandum respecting the denial of certiorari that

842, 845 (Fla. 2023) (rejecting an argument that the "totality of the circumstances," including a 30-year delay between his offense and second resentencing, rendered the defendant's death sentence a violation of the Eighth Amendment); *Owen v. State*, 364 So. 3d 1017, 1027 (Fla. 2023) ("[T]his Court has consistently rejected such claims as 'facially invalid.' " (quoting *Orme*, 361 So. 3d at 845)).

We affirm the postconviction court as to this issue.

**3**

Next, Cole argues the postconviction court erred in denying his method-of-execution claim as untimely. On this point, Cole asserts an as-applied challenge to the constitutionality of Florida's lethal injection procedures, arguing that he suffers from Parkinson's disease which will make placing the intravenous lines necessary to carry out lethal injection "very difficult, needlessly painful, and

---

lower courts could act as "laboratories" to evaluate whether executing a prisoner after many years on death row constitutes cruel and unusual punishment. *Id.* at 1422 (quoting *McCray v. New York*, 461 U.S. 961, 963 (1983)). This concept became known as a *Lackey* claim. *Johnson v. Bredesen*, 558 U.S. 1067, 1072 (2009) (Thomas, J., concurring) (quoting *id.* at 1069 (Stevens, J., respecting denial of certiorari)).

unreasonably dangerous," thereby constituting cruel and unusual punishment.

We reject Cole's argument. First, the postconviction court properly determined that Cole's argument is untimely. Cole alleged in his motion that he has suffered from Parkinson's disease since at least 2017. Even so, Cole failed to raise any argument related to the method of execution until after the Governor signed a death warrant. Identifying this potentially dispositive issue at the *Huff* hearing, the postconviction court questioned defense counsel as to the reason for the delay in Cole's claim. In response, counsel argued only that lethal injection protocols have changed, but counsel could not cite a specific change that would justify the delay.[17] Cole's arguments are therefore insufficient to overcome the time bar. *See Ferguson v. State*, 101 So. 3d 362, 365 (Fla. 2012)

---

17. THE COURT: Is there a change to the protocol that you can point me to that would make a difference as to not filing it in the past? I mean, there may be amendments to it, but how material are those amendments?

MR. SHAKOOR: Well, Judge, I can't say there's a change in the protocol, but what's unique to Mr. Cole is the fact that he has Parkinson's disease.

(rejecting an argument that a method-of-execution claim is not ripe until a death warrant is signed).

Regardless, Cole's claim is meritless. To challenge a method of execution under the Eighth Amendment's prohibition of cruel and unusual punishment, Cole must "(1) establish that the method of execution presents a substantial and imminent risk that is sure or very likely to cause serious illness and needless suffering and (2) identify a known and available alternative method of execution that entails a significantly less severe risk of pain." *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (citing *Glossip v. Gross*, 576 U.S. 863, 877 (2015)); *Bucklew v. Precythe*, 587 U.S. 119, 139-40 (2019) (reconfirming that anyone bringing a method-of-execution claim alleging the infliction of unconstitutionally cruel pain must meet the *Baze-Glossip* test).

In an effort to meet this standard, Cole alleges involuntary movements due to Parkinson's will make venous access more difficult or more painful. Even taking the allegations as presented in his motion for postconviction relief as true though, Cole's claim

fails as a matter of law.[18]  We have already rejected challenges to the etomidate protocol based upon the possibility of involuntary movements.  *See Asay*, 224 So. 3d at 701; *Long v. State*, 271 So. 3d 938, 944 (Fla. 2019) (crediting the trial court's finding that "[e]ven if Defendant had such a seizure, the lethal injection protocol requires that an inmate be restrained and the IV lines taped").  And we have repeatedly recognized that the Department of Corrections is entitled to the presumption that it will comply with the lethal injection protocol.  *See, e.g.*, *Muhammad v. State*, 132 So. 3d 176, 203 (Fla. 2013) (citing *Valle v. State*, 70 So. 3d 530, 549 (Fla. 2011)).  That protocol includes safeguards to ensure the condemned is unconscious throughout the execution.  *Long*, 271 So. 3d at 945; *see also Cooey v. Strickland*, 589 F.3d 210, 225 (6th Cir. 2009) (risk

---

18.  For this reason, we disagree with Cole that he was entitled to an evidentiary hearing on this claim.  *Jimenez v. State*, 265 So. 3d 462, 475 (Fla. 2018) (citing *Hannon v. State*, 228 So. 3d 505, 508-09 (Fla. 2017)) (speculative and conclusory allegations that lethal injection protocols present substantial risk of serious harm are insufficient to warrant an evidentiary hearing).  We likewise reject his unpreserved and inadequately briefed equal protection and due process arguments.  Cole has received the process due to him, but he has failed to meet the various standards necessary to overcome summary denial.

of improper implementation of state's one-drug lethal injection protocol, which called for IV injection of thiopental sodium, did not render protocol cruel and unusual in violation of the Eighth Amendment). Moreover, "[b]eing pricked numerous times in the course of having an IV inserted is not cruel and unusual punishment, however uncomfortable it may be." *Schwab v. State*, 995 So. 2d 922, 927 (Fla. 2008); *see also Barber v. Governor of Ala.*, 73 F.4th 1306, 1319 (11th Cir. 2023) (finding death row inmate's arguments "fatal[ly] flaw[ed]" because they were "premised on the assumption that protracted efforts to obtain IV access" would cause an unconstitutional level of pain).

On the whole, Cole's allegations of potential problems with venous access are both speculative and legally insufficient. The postconviction court properly summarily denied the claim.

**4**

In his final argument on appeal, Cole contends the postconviction court erred in sustaining objections to and denying his various public records requests related to current lethal injection procedure and previous executions. We review this issue

for abuse of discretion, *Hannon v. State*, 228 So. 3d 505, 511 (Fla. 2017), and conclude none exists here.

Cole's public records requests were made pursuant to Florida Rule of Criminal Procedure 3.852(h) and (i), which permits counsel for a defendant subject to a death warrant to request the production of certain public records. Fla. R. Crim. Pro. 3.852(h)(3). But while the rule contemplates public records requests after a warrant has been signed, "this discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." *Asay*, 224 So. 3d at 700 (quoting *Sims v. State*, 753 So. 2d 66, 70 (Fla. 2000)). So, the rule also prescribes meaningful limitations to records requests:

> [R]ecords requests under Rule 3.852(h) are limited to "persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey," . . . whereas, records requests under Rule 3.852(i) must "show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed."

*Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019) (internal citations omitted) (quoting *Bowles v. State*, 276 So. 3d 791, 795 (Fla. 2019)).

Cole recognizes that existing precedent demonstrates his records requests do not relate to a colorable claim for postconviction relief. We agree that Cole's argument in this regard is foreclosed by precedent. *See, e.g.*, *id.* (concluding that denial of defendant's requests for records related to lethal injection protocol was not abuse of discretion because the constitutionality of Florida's current lethal injection protocol had been upheld, and the records therefore were unlikely to lead to a colorable claim for postconviction relief); *Asay*, 224 So. 3d at 700. And we reject Cole's argument to the extent he suggests we should recede from that precedent.

Likewise, we reject Cole's argument that denying him access to these records violates his rights to due process and access to the courts under the Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution. *See Heath v. State*, 3 So. 3d 1017, 1029 n.8 (Fla. 2009) ("Vague and conclusory allegations on appeal are insufficient to warrant relief." (citing *Doorbal v. State*, 983 So. 2d 464, 484 (Fla. 2008))). The postconviction court did not abuse its discretion in denying Cole's request.

**B**

Because Cole is not entitled to relief, we deny his motion for stay of execution. *See Dillbeck*, 357 So. 3d at 103 ("[A] stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted." (quoting *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014))).

**III**

We affirm the summary denial of Cole's fourth successive motion for postconviction relief and the order denying Cole's public records requests. We also deny his motion for stay of execution. No oral argument is necessary, and no motion for rehearing will be considered by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Marion County,
    Robert William Hodges, Judge
    Case No. 421994CF000498CFAXXX

Eric Pinkard, Capital Collateral Regional Counsel, Ali A. Shakoor, Assistant Capital Collateral Regional Counsel, and Adrienne Joy Shepherd, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, Timothy A. Freeland, Senior Assistant Attorney General, Tampa, Florida, and Rick Buchwalter, Assistant Attorney General, Tampa, Florida,

for Appellee